James PUTNAM, Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 99–29.

Supreme Court of Wyoming.

Feb. 29, 2000.

Representing Appellant: Michael R. O'Donnell of Burke, Woodard & O'Donnell, P.C., Cheyenne, WY. Argument presented by Mr. O'Donnell.

Representing Appellee: Gay Woodhouse, Attorney General; Paul Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Robin Sessions Cooley, Assistant Attorney General. Argument presented by Ms. Cooley.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and HILL, JJ.

HILL, Justice.

Appellant James Putnam pleaded guilty to one count of possession of methamphetamine in violation of Wyo. Stat. Ann. § 35-7-1031 conditioned upon his appeal of the district court's denial of his motion to suppress evidence. Finding no error in the district court's decision denying the motion, we affirm.

## ISSUES

Appellant presents the following issues for review:

1. Whether the District Court erred in concluding the continued investigative detention of Mr. Putnam was legitimate when the Officer could point to no articulable fact supporting a reasonable suspicion of criminal activity?

2. Whether the District Court erred in concluding the police officer's searches of this vehicle were legitimate when it was clear no probable cause existed for any of the searches?

3. Whether the District Court erred in concluding the police had probable cause to arrest Mr. Putnam when the only connection between Mr. Putnam and the alleged drugs was his mere presence in the vehicle?

4. Whether the District Court erred in concluding Mr. Putnam was without standing to assert violation of his constitutional rights as a result of searches of a vehicle he possessed with permission of the owner?

The State rephrases the issues as a series of statements:

I. The District Court did not err in denying Appellant's motion to suppress as Appellant lacked standing. Because Appellant lacked standing, he was not entitled to allege that his Fourth Amendment rights were violated by the search of the vehicle and the subsequent seizure of drugs found therein.

II. Based on the facts and circumstances of this case, the district court did not otherwise err in denying Appellant's motion to suppress.

III. It is clear from the record that there was sufficient probable cause to arrest Appellant.

## FACTS

At approximately 1:30 a.m. on March 12, 1998, Officer Randy Bjorklund of the Casper Police Department was on patrol when he observed a light in the cab of a pickup truck parked on Oakcrest Street. Officer Bjorklund pulled up behind the vehicle to investigate. The officer was concerned because a number of auto burglaries had recently been reported in that area.

Appellant was sitting in the vehicle behind the steering wheel with his legs on the seat. Robert Carney was standing outside the open passenger door on the curb. Neither person was appropriately dressed for the chilly conditions, and both appeared slightly nervous at Officer Bjorklund's approach.

While standing outside of the vehicle talking to Appellant and Carney, Officer Bjorklund noticed there were a "bunch" of stereo-type wires and electrical instruments on the floorboard. This aroused the officer's suspicions regarding a possible auto burglary. After talking with Appellant and Carney, Officer Bjorklund learned that the truck was parked in the street directly in front of Appellant's house, and that Carney was discussing the possible purchase of a puppy. It was also disclosed that Appellant was not the owner of the truck; rather, he claimed he had borrowed it from his friend, Joe Gallager. All of this information prompted a warrants check which disclosed no outstanding

warrants on either party. A check of the truck's plates did reveal, however, that the truck belonged to one John Gallager, not a Joe.

Around the same time, Appellant voluntarily exited the vehicle. The officer determined that for safety reasons, Appellant and Carney should be patted down for any possible weapons. Found on Appellant was a butane torch-type lighter, a type of lighter the officer identified from experience as one used to smoke methamphetamine. Officer Bjorklund was still concerned about a possible auto burglary, so he visually examined the interior of the vehicle. On the floor of the vehicle were loose wires, some electrical equipment, and a stereo CD-player, but no tools, such as wire cutters.

At this point, Officer Bjorklund retrieved his canine unit from his patrol car to search the truck for illegal drugs. The dog alerted on the middle of the seat by an arm rest. Pulling the seat back, the officer found a pipe glass vial with a burnt residue and a bag containing a "hard rock" substance which he believed to be methamphetamine. A field test confirmed this belief. Appellant and Carney denied any knowledge regarding the presence of the drugs. Despite his denials, Appellant was arrested at that time based on his possession of the truck.

After Appellant's arrest, the owner of the truck, John Gallager, arrived on the scene. Under questioning by Officer Bjorklund, Gallager confirmed that the mess of wires and equipment on the floorboard was the normal condition of the truck, thus satisfying the officer's concerns relating to a possible burglary. Gallager also denied having seen the methamphetamine or glass vial before. In addition, Gallager informed Officer Bjorklund that he was aware that Appellant had taken the truck that morning and that it had not been returned. Furthermore, Gallager claimed that he "... was about ready to file a stolen vehicle report on the vehicle."

Appellant was charged with possession of a controlled substance in violation of Wyo. Stat. Ann. § 35–7–1031 (LEXIS 1999). On May 27, 1998, Appellant filed a motion to suppress the drugs found in the truck, challenging his detention and his arrest. After a hearing on the motion, the district court denied the motion in its entirety. Appellant subsequently pled *nolo contendere* to one count of possession reserving the right to appeal the denial of his motion to suppress. That appeal is now before us.

## STANDARD OF REVIEW

We recently reiterated our standard for reviewing a trial court's ruling on a motion to suppress:

> We generally do not disturb evidentiary rulings made by a trial court unless the trial court abused its discretion. *Wilson v. State*, 874 P.2d 215, 218 (Wyo.1994). In reviewing a trial court's ruling on a motion to suppress evidence, we do not interfere with the trial court's findings of fact unless the findings are clearly erroneous. *Gehnert v. State*, 956 P.2d 359, 361 (Wyo.1998). We view the evidence in the light most favorable to the trial court's determination because the trial court has an opportunity at the evidentiary hearing to assess "the credibility of the witnesses, weigh the evidence, and make the necessary inferences, deductions, and conclusions." *Id.* The constitutionality of a particular search or seizure is, however, a question of law that we review *de novo*. *Id.*; *Jones v. State*, 902 P.2d 686, 690 (Wyo.1995).

*Burgos–Seberos v. State*, 969 P.2d 1131, 1133 (Wyo.1998).

## DISCUSSION[1]

*Truck Search*

The threshold issue in this case concerns Appellant's standing to challenge the canine search of the truck. The district court concluded that Appellant lacked standing because "... he was not the owner of the vehicle ... [and] [t]here is evidence that whatever authority he had to possess the

---

**1.** Appellant asserts violations of his rights under the United States and Wyoming constitutions. Appellant has failed to provide any cogent argument supporting a finding on state constitutional grounds. *See Vasquez v. State*, 990 P.2d 476 (Wyo.1999). Therefore, we will restrict our discussion to federal constitutional concerns.

vehicle had expired by the time of the search." Appellant claims this ruling is error because he had permission to borrow the truck in the first instance which is sufficient to demonstrate a legitimate expectation of privacy.

A person alleging an illegal search must demonstrate a legitimate expectation of privacy in the searched property. *Dean v. State,* 865 P.2d 601, 613 (Wyo.1993). In order to demonstrate a legitimate expectation of privacy, "both an actual subjective expectation of privacy and a reasonable expectation of privacy that society is prepared to recognize" must be shown. *Id.* Four factors are considered when determining whether an individual possesses a reasonable expectation of privacy:

(1) the precautions taken in order to maintain one's privacy; (2) the likely intent of the drafters of the United States and Wyoming Constitutions; (3) the property rights a claimant possesses in the invaded area; [and] (4) the legitimacy of the individual's possession of or presence in the property which was searched or seized.

*Dean,* 865 P.2d at 613 (quoting *Pellatz v. State,* 711 P.2d 1138, 1141 (Wyo.1986)). The burden of proving that a reasonable expectation of privacy exists is on the proponent of a motion to suppress. *Rakas v. Illinois,* 439 U.S. 128, 131 fn. 1, 99 S.Ct. 421, 424 fn. 1, 58 L.Ed.2d 387 (1978); *United States v. Arango,* 912 F.2d 441, 446 (10th Cir.1990); 5 Wayne R. LaFave, *Search and Seizure* § 11.3(e) at 188 & fn. 285 (1996). Mere physical possession or a conclusory claim of bailment is insufficient in and of itself to confer a reasonable expectation of privacy and establish standing to challenge a search or seizure. *Arango,* 912 F.2d at 445–46; 5 Wayne R. LaFave, *Search and Seizure* § 11.3(e) at 188.

The evidence unequivocally shows that Appellant had taken the truck. Appellant claimed that he had the permission of its owner, although the owner did not confirm this claim. Indeed, the evidence shows that Appellant did not have permission to use or possess the truck *at the time of the search,* thus depriving him of any expectation of privacy in the truck. The only evidence at the suppression hearing was introduced through the testimony of Officer Bjorklund, the sole witness at the hearing. The testimony of Officer Bjorklund was that the owner of the truck disavowed any possessory rights of Appellant upon the owner's arrival at the scene. As noted above, it is *Appellant's* burden to come forward with proof that he had a reasonable expectation of privacy in the truck—mere allegations or self-serving, after-the-fact statements that he had a right to possess is insufficient to carry that burden. *United States v. Betancur,* 24 F.3d 73, 77 (10th Cir.1994); *State v. Mlo,* 335 N.C. 353, 440 S.E.2d 98, 110–111 (1994); *State v. Schneider,* 51 Or.App. 161, 625 P.2d 150, 153 (1981). Here, Appellant presented no testimony or evidence whatsoever at the suppression hearing in an attempt to meet his burden. Under these circumstances, we cannot say that the trial court's factual determination that Appellant did not have permission to possess the truck at the time of the search was clearly erroneous. Therefore, we affirm the determination that Appellant did not have standing to contest the search of the truck.

*Investigatory Detention*

Our decision regarding Appellant's standing to challenge the search of the truck does not end our inquiry. Even if a person cannot directly challenge the search of a vehicle because of a lack of standing, they may indirectly challenge the search if they can demonstrate that the fruits of the search are a consequence of an illegal seizure of their person. *United States v. Jones,* 44 F.3d 860, 872 (10th Cir.1995); *United States v. McKneely,* 6 F.3d 1447, 1450 (10th Cir. 1993); 5 Wayne R. LaFave, *Search and Seizure* § 11.3(e), at 173–74 & fn. 231. This concept derives from the proposition that Fourth Amendment rights are personal in nature and, as such, one has the right to be free from unreasonable searches or seizures of their person. *Id.* § 11.3(e); *Rakas,* 439 U.S. at 133–34, 99 S.Ct. at 425. Thus, even without standing to directly contest the vehicle search, courts have suppressed evidence seized from a vehicle search as "fruit of the poisonous tree" if the detention or arrest of a

person was unlawful. *McKneely*, 6 F.3d at 1450.

■■■■■ An investigatory or *Terry* stop represents a seizure which implicates the Fourth Amendment, requiring the presence of specific, articulable facts and rational inferences giving rise to a reasonable suspicion that a person has committed or may be committing a crime. *Wilson v. State*, 874 P.2d 215, 219–220 (Wyo.1994) (citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)); *see also McChesney v. State*, 988 P.2d 1071, 1074 (Wyo.1999). There is a dual inquiry for evaluating the reasonableness of an investigatory stop: (1) whether the officer's actions were justified at the inception; and (2) whether it was reasonably related in scope to the circumstances which justified the interference in the first instance. *Wilson*, 874 P.2d at 223 (quoting *United States v. Hensley*, 469 U.S. 221, 228, 105 S.Ct. 675, 680, 83 L.Ed.2d 604 (1985) and *Terry*, 392 U.S. at 20–21, 88 S.Ct. at 1879)). The conduct of an officer is judged by an objective standard which takes into account the totality of the circumstances. *Terry*, 392 U.S. at 21–22, 88 S.Ct. at 1879–81; *United States v. Lang*, 81 F.3d 955, 965 (10th Cir.1996).

■■■■ Appellant and the State agree that Officer Bjorklund's initial decision to stop and investigate a possible auto burglary was lawful. Appellant and the State part company, however, on whether or not Appellant's detention constituted a violation of the Fourth Amendment. Appellant insists that there was no objective basis for a reasonable suspicion that Appellant was committing a crime and that the detention, along with the "pat-down" search of his person, was based entirely upon Officer Bjorklund's "hunch". The State counters that Officer Bjorklund had a reasonable and articulable suspicion to detain Appellant.[2] We agree with the State.

The record discloses the following: The officer saw a truck parked on a side street with its dome light on at 1:30 in the morning; the truck was located in an area which had recently experienced problems with auto bur-

glaries; there were two people present, one standing outside the truck and the other sitting inside; neither person was dressed appropriately for the weather at this time of night, at this time of the year; the parties stated that they were discussing the purchase of a puppy—an unusual explanation given the circumstances; there were wires and various stereo components on the truck floorboard; neither party owned the truck; and, when asked, Appellant could not supply the officer with the correct name of the truck's owner. Each of these factors considered in isolation could be construed as indicating innocent behavior. However, we must look at the circumstances in their entirety and, when we do so, the factors noted clearly support a reasonable suspicion of illegal activity. Therefore, any detention was legitimate under the circumstances.

■■■ Appellant also complains about the "pat-down" search conducted by Officer Bjorklund, which occurred after Appellant had exited the truck on his own volition. The legitimacy of a "pat-down" search or a "frisk" for weapons is guided by the same inquiry dictated by the standards set forth for determining the validity of a detention stop. *Terry*, 392 U.S. at 19–20, 88 S.Ct. at 1878–79. As the Supreme Court made clear in that case:

> The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. [Citations and footnote omitted] And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience. [Citation omitted]

*Terry*, 392 U.S. at 27, 88 S.Ct. at 1883; *United States v. Lang*, 81 F.3d at 966 ("Since

---

**2.** The State also argues that there was no seizure because Appellant was able to briefly leave the scene to retrieve a jacket from his house. We need not consider this argument because our review of the record convinces us that any seizure of Appellant was justified under the circumstances.

police officers should not be required to take unnecessary risks in performing their duties, they are 'authorized to take such steps as [are] reasonably necessary to protect their personal safety and maintain the status quo during the course of [a *Terry* ] stop.' "); *see also Perry v. State,* 927 P.2d 1158, 1163–64 (Wyo.1996); *Collins v. State,* 854 P.2d 688, 691 (Wyo.1993).

Officer Bjorklund explained that he searched Appellant out of consideration for his own safety after Appellant had exited the vehicle and shut the door to the truck. The decision to "frisk" Appellant for possible weapons was not unreasonable. Officer Bjorklund was not required to take any unnecessary risks in the performance of his duty under the circumstances which confronted him here: the lateness of the hour, the history of auto burglaries in the area, and the significant factors pointing to the possibility that an auto burglary was in process. *See generally United States v. Michelletti,* 13 F.3d 838 (5th Cir.1994) (History of crimes in the area and lateness of the hour justified frisk for weapons to protect officer safety). Under these circumstances, we cannot second guess the officer's decision that his safety required a search of Appellant at that moment.

 Finally, Appellant implies that the officer had abandoned his investigation of an auto burglary and had moved into a drug investigation when he retrieved the canine unit. If the focus of the investigation had changed, then the officer would have to support that with a reasonable articulable suspicion of illegal activity justifying any further detention. *See Wilson,* 874 P.2d at 224. In this case, however, the record clearly shows that Officer Bjorklund's suspicions regarding a possible auto burglary were not satisfied until after the owner of the truck appeared on the scene:

Q: So what did you do at that point in time?

[Officer Bjorklund]: I went back to my vehicle. I asked [O]fficer Wnuk to watch the two subjects. I got my canine out and returned to the vehicle.

Q: Okay. At this point in time, have you satisfied yourself as to whether or not there still is a suspicion of auto burglary or not?

A: No, sir. I was not satisfied with that. I still thought there was something funny going on there and that it could have been an auto burglary.

. . . .

Q: Did you continue to search for evidence of an auto burglary?

A: At the time I had my canine?

Q: Yes.

A: No, I'd kind of dropped one to move into another phase. But I was not satisfied that there was an auto burglary that had occurred.

Q: It continued—so you continued your investigation at that time?

A: Yes, sir.

. . . .

Q: After the methamphetamine was seized, did you conduct any further investigation or search to determine whether there was evidence of an auto burglary?

A: Yes.

Q: What did you do?

A: About—about that time the owner, John Gallager arrived. I asked him about the vehicle and who had the vehicle. And he said [Appellant] came over and took it that morning. He said he hadn't returned the vehicle, and that he was about ready to file a stolen vehicle report on the vehicle. I asked him about the wiring and stuff inside there, and there was nothing peculiar about that to him. He said there was nothing wrong.

. . . .

Q: After Mr. Gallager explained the electrical wiring and radio, were you satisfied with that explanation?

A: Of the electrical wiring? Yes, sir.

While the foregoing testimony is not the most artful ever given, its thrust is clear: Officer Bjorklund's suspicions related to an auto burglary were not satisfied until the owner had arrived on the scene and confirmed that there was no problem regarding that issue. It was reasonable for the officer to remain suspicious under these circum-

stances until the matter was resolved by the truck's owner.

We reiterate that what is under consideration here is the detention, not the search of the truck. While the use of a canine unit to search the truck for drugs under the circumstances of this case is questionable, Appellant lacks standing to challenge this action. Our concern at this point is with the detention of Appellant regarding a possible auto burglary. Since the officer's reasonable suspicions in that regard were not dissipated until after the methamphetamine had been discovered and Appellant had been arrested, there is no basis for suppressing the drug evidence on the grounds that the detention of his person was illegal.

*Arrest*

Appellant's final claim of error is that the officer lacked probable cause to arrest him for possession of methamphetamine. Appellant's argument is predicated on his assertion that his mere presence in the vehicle where the drugs were found is insufficient to support a finding of probable cause for arrest. We disagree.

▮▮▮▮ An arrest is the most intrusive type of civilian-police encounters, and its validity "requires justification by probable cause to believe that a person has committed or is committing a crime." *Wilson*, 874 P.2d at 220 (citing *Rodarte v. City of Riverton*, 552 P.2d 1245, 1255 (Wyo.1976)). "Probable cause to arrest without a warrant exists when the facts and circumstances within the knowledge of the arresting officer together with facts and circumstances about which the officer has trustworthy information are sufficient to justify a reasonably cautious or prudent person in the belief that the person to be arrested has committed or is committing the offense." *Carroll v. State*, 938 P.2d 848, 850 (Wyo.1997) (citations omitted).

> "In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof

> is accordingly correlative to what must be proved."

> The facts and circumstances considered need not amount to proof of guilt, or even to prima facie evidence of guilt but must be more than bare suspicion.

*Raigosa v. State*, 562 P.2d 1009, 1013 (Wyo. 1977) (quoting *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879, *reh'g denied*, 338 U.S. 839, 70 S.Ct. 31, 94 L.Ed. 513 (1949)).

▮▮▮▮ Here, the officer was confronted with the fact that there was methamphetamine in the cab of the truck, and Appellant was the only person observed by the officer with access to that location. Indeed, Appellant vigorously asserted that he had the right to possess the truck. The location of the drugs and the fact that only Appellant had the apparent ability to access that location at that time is sufficient to create in a reasonably cautious or prudent person the belief that the drugs belonged to Appellant. *See United States v. Robinson*, 30 F.3d 774, 785 (7th Cir.1994) (Probable cause for warrantless arrest existed where suspect and police officer were only persons present in area where gem packs of cocaine found on ground.); *Robertson v. State*, 596 A.2d 1345, 1353 (Del.Supr.1991) (Probable cause existed for warrantless arrest of driver of vehicle under which bag of cocaine was discovered.). Appellant's complaint that the drugs could just as easily have belonged to the owner of the truck as to him goes more properly towards a determination of guilt, not whether there was probable cause to arrest Appellant on that night. Accordingly, we affirm the district court's determination that there was probable cause to arrest Appellant.

**CONCLUSION**

Appellant failed to carry his burden of showing that he had any possessory interest in the vehicle at the time of the search, thus failing to demonstrate a legitimate expectation of privacy. The consequence of that failure is a lack of standing by Appellant to challenge the search. Furthermore, there

was a reasonable, articulable suspicion of illegal activity which justified Appellant's detention and frisk search. The arrest of Appellant was supported by probable cause based on the location of the drugs and Appellant's access and control over that location. There was no error in the district court's decision denying the motion to suppress. Affirmed.