2001 WY 52

**Howard Lee MARTINDALE,
Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

No. 00-99.

Supreme Court of Wyoming.

June 13, 2001.*

---

* This case was originally assigned to Justice Thomas on December 15, 2000, for the rendering of a proffered majority opinion. This case was reassigned to Justice Hill on February 5, 2001.

Representing Appellant: Sylvia Lee Hackl, State Public Defender and Donna D. Domonkos, Appellate Counsel. Argument by Ms. Domonkos.

Representing Appellee: Gay Woodhouse, Wyoming Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Paul S. Rehurek, Deputy Attorney General. Argument by Mr. Rehurek.

Before LEHMAN, C.J., and GOLDEN, HILL, and KITE, JJ.

HILL, Justice.

[¶ 1] Howard Lee Martindale (Martindale) entered a conditional plea of guilty to one count of unlawful use of a credit card in violation of Wyo.Stat.Ann. § 6–3–802(a)(i) and (b)(iii) (LEXIS 1999). On appeal, Martindale challenges the district court's denial of a motion to suppress evidence discovered after an investigatory stop. We conclude that the stop of Martindale was supported by a reasonable suspicion of criminal activity and affirm the district court's order.

## ISSUE

[¶ 2] Martindale presents this issue for review:

Whether the district court erred when it denied Martindale's motion to suppress evidence found after a stop which was not supported by a reasonable suspicion of criminal activity?

The State's statement of the issue is substantially similar:

Did the district court properly deny appellant's motion to suppress evidence?

## FACTS

[¶ 3] On October 12, 1999, Officer Rasmussen of the Evanston Police Department stopped a vehicle driven by Travis Kidd after a registration check revealed that the car's license plates were listed as lost or stolen. Officer Matthews arrived on the scene shortly after Kidd was stopped. The officers sought to ascertain why Kidd was driving with license plates that did not belong to his vehicle, but Kidd could not offer a reasonable explanation. The officers noticed that while Kidd had been drinking a bottle of soda, another cold bottle of soda and a coat were on the passenger seat. Officer Matthews testified that Kidd indicated he was traveling with a Howard Martindale, and that he had been driving around the area looking for him. Officer Rasmussen testified that Kidd did not name his companion in his presence, although Kidd did state that he was traveling with someone.

[¶ 4] While questioning Kidd, the officers noted a man who walked past the scene and made eye contact with Kidd. The eye contact indicated to Officer Matthews that Kidd and the man knew each other. The man continued on for a distance and then sat down in front of a motel to watch the scene. This struck both officers as unusual.

[¶ 5] Meanwhile, Kidd had granted the officers permission to search his vehicle. Inside the trunk, the officers found several boxes containing a large collection of coins. After receiving an inconsistent explanation for the presence of the coins, the officers asked police dispatch to check for any recent burglaries. Dispatch confirmed that Natrona County officials reported a recent burglary involving a coin collection. Confronted with that information, Kidd blurted out, "It was a burglary. We—we did it in Paradise

Valley." Kidd was placed under arrest for possession of the stolen coins.

[¶ 6] After placing Kidd in the back seat of Officer Rasmussen's patrol car, Officer Matthews glanced over at the man sitting in front of the motel. Upon making eye contact with Officer Matthews, the man stood up and began to quickly walk away around the corner of the motel. Officer Matthews got into his patrol car and intercepted the man. When asked what he was doing, the man replied that he was just curious. The man gave his name as Howard Martindale but initially denied knowing a Travis Kidd. However, when told that Kidd had said he knew him, Martindale stated that he did know Kidd and was catching a ride with him to Salt Lake City. When confronted with information that Kidd had been arrested for the stolen coins found inside the trunk, Martindale stated that he knew the coins were stolen, but that he had nothing to do with any burglary.

[¶ 7] Martindale was carrying a black nylon video camera case, and Officer Matthews asked if he could search it. Martindale nodded affirmatively and set the camera case on the hood of the patrol car. Inside the case were a new video camera, several new compact discs, two eight-millimeter tapes, and a receipt from the Evanston Wal–Mart. At that point, Martindale was arrested based on his possible ties to the stolen coins. A search of Martindale's person revealed a credit card with a woman's name on it. The credit card had been used to purchase the video camera. At that point, Martindale stated, "I used the credit card. I signed the name. I'll take the wrap [*sic* ] for that. But I had nothing to do with the burglary."

[¶ 8] Martindale was charged with one felony count of unlawful use of a credit card in violation of § 6–3–802(a)(i) and (b)(iii)[1].

On November 19, 1999, Martindale filed a motion to suppress the evidence seized during the search on the basis that Officer Matthews "had neither probable cause to arrest nor reasonable articulable suspicion to conduct an investigatory stop." After a hearing on the motion, the district court issued an Order Denying Motion to Suppress on December 20, 1999. The district court concluded the officers had a reasonable suspicion that Martindale might be Kidd's companion and were, therefore, justified in stopping him and asking for identification. Martindale subsequently changed his plea to a conditional plea of guilty pursuant to W.R.Cr.P. 11, reserving his right to challenge the denial of his motion to suppress on appeal. That appeal is now before us.

## STANDARD OF REVIEW

 [¶ 9] We utilize the following standard for reviewing a trial court's ruling on a motion to suppress:

We generally do not disturb evidentiary rulings made by a trial court unless the trial court abused its discretion. *Wilson v. State*, 874 P.2d 215, 218 (Wyo.1994). In reviewing a trial court's ruling on a motion to suppress evidence, we do not interfere with the trial court's findings of fact unless the findings are clearly erroneous. *Gehnert v. State*, 956 P.2d 359, 361 (Wyo.1998). We view the evidence in the light most favorable to the trial court's determination because the trial court has an opportunity at the evidentiary hearing to assess "the credibility of the witnesses, weigh the evidence, and make the necessary inferences, deductions, and conclusions." *Id.* The constitutionality of a particular search or seizure is, however, a question of law that we

---

1. Wyo.Stat.Ann. § 6–3–802 (LEXIS 1999) states:
 § **6–3–802. Unlawful use of credit card; penalties.**
 (a) A person is guilty of unlawful use of a credit card if, with the intent to obtain property or services by fraud, he:
 (i) Uses a credit card, or the number or description of a credit card, issued to another person without the consent of that person[.]
 ....

 (b) Unlawful use of a credit card is:
 ....
 (iii) A felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,-000.00), or both, if the value of the property or services purchased or obtained in violation of this section within any sixty (60) day period in the state of Wyoming totals five hundred dollars ($500.00) or more in the aggregate.

review *de novo. Id.; Jones v. State,* 902 P.2d 686, 690 (Wyo.1995).

*Putnam v. State,* 995 P.2d 632, 635 (Wyo. 2000) (quoting *Burgos–Seberos v. State,* 969 P.2d 1131, 1133 (Wyo.1998)).

## DISCUSSION

[¶ 10] Martindale challenges the validity of the investigatory stop under the Fourth Amendment of the United States Constitution and Article 1, § 4 of the Wyoming Constitution arguing that reasonable suspicion for an investigatory stop did not exist[2]. Martindale prefaces his argument with an attack on the district court's factual findings. Specifically, the district court stated in its order denying the motion to suppress that the facts were not in dispute, including the finding that Kidd informed the officers that he had been driving around looking for Howard Martindale. This finding is clearly erroneous, Martindale contends, when contrasted with the testimony of Officer Rasmussen who stated that Kidd did not, in fact, name his traveling companion. In addition, Martindale argues that his actions were insufficient to raise a reasonable, articulable suspicion of criminal activity. He points out that walking by a police stop and then watching from a distance is hardly an unusual or suspicious activity. Thus, Martindale concludes that the investigatory stop by Officer Matthews was not reasonable as it was based on only a hunch.

[¶ 11] "The investigatory stop represents a seizure which invokes Fourth Amendment safeguards, but, by its less intrusive character, requires only the presence of specific and articulable facts and rational inferences which give rise to a reasonable suspicion that a person has committed or may be committing a crime." *Wilson,* 874 P.2d at 220 (citing *Lopez v. State,* 643 P.2d

682, 683); *see also Putnam,* 995 P.2d at 637; and *McChesney v. State,* 988 P.2d 1071, 1074 (Wyo.1999). We have a dual inquiry for evaluating the reasonableness of an investigatory stop: (1) whether the officer's actions were justified at the inception; and (2) whether it was reasonably related in scope to the circumstances that justified the interference in the first instance. *Wilson,* 874 P.2d at 223 (quoting *Terry,* 392 U.S. at 20, 88 S.Ct. at 1879); *see also United States v. Hensley,* 469 U.S. 221, 228, 105 S.Ct. 675, 680, 83 L.Ed.2d 604 (1985). An officer's conduct is judged by an objective standard which takes into account the totality of the circumstances. *Putnam,* 995 P.2d at 637; *Terry,* 392 U.S. at 21–22, 88 S.Ct. at 1879–81; *United States v. Lang,* 81 F.3d 955, 965 (10th Cir.1996).

[¶ 12] After reviewing the record, we conclude that Officer Matthews possessed reasonable articulable suspicions that justified the investigatory stop of Martindale. The record discloses the following: (1) Kidd was driving a vehicle with plates that did not belong to it; (2) Kidd's statements indicated that he was traveling with a person named Howard Martindale and was looking for him in the area where he was stopped; (3) the presence of a coat and a bottle of soda on the passenger seat corroborated Kidd's statements; (4) when Martindale walked past the scene, he made eye contact with Kidd indicating that they knew each other; (5) Martindale stopped further up the street and sat down to watch the stop; (6) a large cache of stolen coins was found inside the trunk of the car; and (7) after Kidd was arrested, Martindale got up and started to walk away when Officer Matthews looked over at him. Considered in isolation, Martindale's actions could be construed as the innocent behavior of a curious bystander. However, when viewed in light of all of the circumstances,

2. Martindale does not offer an alternative analysis under the Wyoming Constitution, relying instead on the analytical framework for reviewing investigatory detentions set forth in our decisions in *Wilson v. State,* 874 P.2d 215 (Wyo.1994) and *Collins v. State,* 854 P.2d 688 (Wyo.1993). Those decisions reviewed the propriety of an investigatory detention by law enforcement within the context of the standards set forth in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)

and subsequent federal case law. *Wilson,* 874 P.2d at 219–220; *Collins,* 854 P.2d at 692. Since Martindale makes no argument that a different standard should be applied to ascertain the permissible scope of an investigatory detention under the Wyoming Constitution, we will analyze both of his claims pursuant to the standards set forth in our precedents in *Wilson* and *Collins. See also Putnam,* 995 P.2d at 637.

Martindale's actions clearly support a reasonable suspicion that he may have had some connection to Kidd and the stolen coins. Officer Matthews' detention of Martindale was legitimate under the circumstances.

[¶ 13] Even if we accepted Martindale's position and discounted Officer Matthews' testimony that Kidd had named Martindale as his companion, we would still find his detention legitimate. While Officer Rasmussen testified that Kidd did not name Martindale, he also testified that Kidd admitted he was traveling with someone. The officers did not know whom Martindale was when he walked by the scene, but they did know that Kidd had a traveling companion who may have had some involvement with the stolen coins. Martindale's actions supported the investigatory stop whether or not Kidd had disclosed any name based on the evidence indicating that another person may be connected to the crime.

[¶ 14] Martindale briefly argues that even if there was a reasonable, articulable suspicion to perform the stop, the stop went beyond the scope of the permissible seizure when Officer Matthews searched the camera case. While his brief is unclear, it appears that Martindale is claiming that the search of the camera case was based on only a hunch, as it was clearly unrelated to the investigation of the crime for which the stop was originally initiated—the stolen coins in the trunk of Kidd's vehicle. The State points out that Officer Matthews had probable cause to arrest Martindale once his identity was established, and the camera case would have been subject to a search incident to the arrest in any event. Beyond that, however, we note that Martindale gave his consent to search the camera case. Martindale makes no argument that his consent was coerced in any way, and the record shows that the circumstances surrounding the consent were not confrontational. Without any cogent argument by Martindale on this issue, we will uphold the search of the camera case.

## CONCLUSION

[¶ 15] We conclude that the investigatory stop of Martindale was supported by a reasonable, articulable suspicion and, therefore,

the district court's order denying his motion to suppress is affirmed.