# IN THE SUPREME COURT, STATE OF WYOMING

## 2017 WY 22

OCTOBER TERM, A.D. 2016

March 1, 2017

MICHAEL WAYNE SWEETS,

Appellant
(Defendant),

v.

S-16-0158

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Sweetwater County*
*The Honorable Nena James, Judge*

*Representing Appellant:*

Office of the State Public Defender: Diane Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; and David E. Westling, Senior Assistant Appellate Counsel.

*Representing Appellee:*

Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Christyne M. Martens, Senior Assistant Attorney General; and Katherine A. Adams, Assistant Attorney General.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**HILL,** Justice.

[¶1]     Michael Wayne Sweets entered a conditional guilty plea to felony possession of methamphetamine.  Mr. Sweets reserved the right to challenge the denial of his motion to suppress, hence this appeal.  We will affirm.

## ISSUE

[¶2]     Mr. Sweets presents one issue:

> The search of Mr. Sweets' person without a warrant or probable cause was a violation of the prohibition of unreasonable searches as set out by the Fourth and Fourteenth Amendments to the United States Constitution and the trial court's refusal to suppress the fruits of that search constitutes reversible error.

## FACTS

[¶3]     On October 27, 2015, the Rock Springs police department and the Wyoming Department of Criminal Investigation together executed an arrest warrant on Helen McCaulley and investigated a tip that Matthew Sweets had bought methamphetamine within the last 24 hours.  Mr. Sweets and Ms. McCaulley are engaged to be married.

[¶4]     As law enforcement arrived at Ms. McCaulley's home to execute the warrant, they were surprised to find Mr. Sweets leaving.  Detective Jason Mower told Mr. Sweets they needed to talk.  Detective Mower told Mr. Sweets he was not under arrest, advised Mr. Sweets of his rights, and began to tell him about the tip that Mr. Sweets bought drugs the night before. Mr. Sweets denied any involvement in drug activity.  Detective Mower told Mr. Sweets that he would get a search warrant if he did not cooperate and told Mr. Sweets to keep his hands out of his pockets.  He allowed Mr. Sweets to go in the home to get a cigarette, which he came back outside to smoke.  Another detective stayed with Mr. Sweets while Detective Mower went to speak to DCI Agent Cody Ruiz, who was executing the warrant inside the home.  During their brief conversation, Agent Ruiz asked if Detective Mower had done a pat-down search, to which Detective Mower said "no."  Agent Ruiz question this and asked, "Why not, it's officer safety isn't it?"

[¶5]     Agent Ruiz then came outside to speak to Mr. Sweets.  According to the agent, Mr. Sweets kept reaching into his front pants pocket, which prompted Agent Ruiz to do a pat-down of the waist area.  Immediately, Agent Ruiz felt a "large bulge on both sides of [Mr. Sweets'] pockets," and after asking what it was, Mr. Sweets removed both methamphetamine and marijuana from his pants pocket.

1

[¶6]     The next day, Mr. Sweets was charged by criminal information with two crimes: (1) felony possession of methamphetamine (over 3 grams), and (2) possession of marijuana (a third offense felony).  In February of 2016, Mr. Sweets filed a motion to suppress, which was denied based on a totality of the circumstances.  The court explained:

> 8. Based on a totality of the circumstances, Special Agent Ruiz was justified in conducting a warrantless pat-down search of Defendant for officer safety reasons.  *See generally Terry v. Ohio,* 392 U.S. 1 (1968); *Speten v. State,* 2008 WY 63, 185 P.3d 25 (Wyo. 2008).  Ruiz's interaction with Defendant was a rapidly evolving situation.  Defendant was wearing a baggy sweatshirt and pants and appeared to be very nervous.  He was making furtive movements and repeatedly disregarded commands from both Mower and Ruiz to keep his hands away from his waist area and out of his pockets.  At the time of the pat-down search of Defendant, the officers had at least a reasonable suspicion, if not probable cause, to believe Defendant was or recently had been involved in an illegal drug transaction.  Moreover, Special Agent Ruiz's concerns regarding his personal safety, as well as the safety of fellow officers, were reasonable under the totality of the circumstances.

[¶7]     Soon after the court issued its ruling on the motion, the parties reached a plea agreement wherein Mr. Sweets pleaded guilty to felony possession of methamphetamine and reserved his right to challenge the denial of the motion to suppress.  The marijuana charge was dismissed.  Mr. Sweets was sentenced to 3-4 years with credit for 122 days served.  This appeal followed.

## **DISCUSSION**

[¶8]     Mr. Sweets argues that the district court erred when it denied his motion to suppress because the pat-down search amounted to an illegal warrantless search.  While Mr. Sweets agrees that in certain situations an officer may perform a warrantless pat-down search, he contends that there were no exigent circumstances in his case to necessitate such a search.

> We review a district court's denial of a motion to suppress as follows: We review the district court's factual findings on a motion to suppress for clear error. We defer to those findings and view the evidence in the light most favorable to the prevailing party because the district court

2

is in the best position to weigh the evidence, assess the credibility of witnesses, and make the necessary inferences, deductions, and conclusions. However, "we review the ultimate determination regarding the constitutionality of a particular search or seizure de novo." *Sen*, ¶ 25, 301 P.3d at 117 (citing *Owens*, ¶ 8, 269 P.3d at 1095). See also *Lovato v. State*, 2010 WY 38, ¶ 11, 228 P.3d 55, 57-58 (Wyo. 2010) (quoting *Yoeuth v. State*, 2009 WY 61, ¶ 16, 206 P.3d 1278, 1282 (Wyo. 2009)); *Meadows v. State*, 2003 WY 37, ¶ 23, 65 P.3d 33, 40 (Wyo. 2003) (quoting *Gehnert v. State*, 956 P.2d 359, 362 (Wyo. 1998)).

*Hunnicutt-Carter v. State*, 2013 WY 103, ¶ 20, 308 P.3d 847, 852 (Wyo. 2013); see also *Phelps v. State*, 2012 WY 87, ¶ 19, 278 P.3d 1148, 1153 (Wyo. 2012).

*Klomliam v. State*, 2014 WY 1, ¶ 14, 315 P.3d 665, 668-669 (Wyo. 2014).

*Engdahl v. State*, 2014 WY 76, ¶ 9, 327 P.3d 114, 117 (Wyo. 2014).

[¶9]     The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses**,** papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV.  We have explained:

An investigatory stop represents a seizure which implicates the Fourth Amendment and,   therefore, requires the presence of specific, articulable facts which, taken together with rational inferences, give rise to a reasonable suspicion that a person has committed or may be committing a criminal offense. *Putnam v. State*, 995 P.2d 632, 637 (Wyo. 2000) (citing *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880, 20 L. Ed. 2d 889 (1968); *Wilson v. State*, 874 P.2d 215, 219-20 (Wyo. 1994)). A dual inquiry exists for evaluating the reasonableness of an investigatory stop: (1) whether the officer's actions were justified at the inception; and (2) whether it was reasonably related in scope to the circumstances that justified the interference in the first instance. *Putnam*, 995 P.2d at 637 (citing *United States v. Hensley*, 469 U.S. 221, 228, 105 S.Ct. 675, 680, 83 L.Ed.2d 604 (1985); *Terry*, 392 U.S. at 20-21, 88 S.Ct. at 1879; *Wilson*, 874 P.2d at 223). An officer's conduct is judged by

an objective standard taking into account the totality of the circumstances. *Putnam*, 995 P.2d at 637 (citing *Terry*, 392 U.S. at 21-22, 88 S. Ct. at 1879-81; *United States v. Lang*, 81 F.3d 955, 965 (10th Cir. 1996)); *see also Martindale v. State*, 2001 WY 52, ¶ 11, 24 P.3d 1138, 1141 (Wyo. 2001).

*LaPlant v. State,* 2006 WY 154, ¶ 14, 148 P.3d 4, 7 (Wyo. 2006). In this case, Mr. Sweets does not dispute that he was seized, but rather his dispute centers on whether or not Agent Ruiz's pat-down search was a pretext to search him for drugs. The legitimacy of a pat-down search or a frisk for weapons is guided by the same inquiry dictated by the standards set forth for determining the validity of a detention stop. *Terry v. Ohio,* 392 U.S. 1, 19-20, 88 S. Ct. 1878-79 (1968). The Supreme Court said in *Terry:*

> The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. [Citations and footnote omitted] And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience. [Citation omitted]

*Putnam v. State*, 995 P.2d 632 at 637 (Wyo. 2000) (citing *Terry*, 392 U.S. at 27, 88 S. Ct. at 1883).

[¶10] Mr. Sweets argues that there were no exigent circumstances present to excuse a warrantless search on his person. He points to Detective Mower's initial decision to not pat him down before going into the house to speak with Agent Ruiz, and questions whether officer safety was an issue in the detective's mind. Indeed, the detective asked Mr. Sweets to keep his hands out of his pockets and away from his waistband. Mr. Sweets complied with that request. "And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883.

[¶11] As the district court recognized, the investigation was evolving from the time Detective Mower spoke with Mr. Sweets all the way through Agent Ruiz's contact with him. The differences between Mr. Sweets' interactions with the two officers were quite different – while he complied with Detective Mower's requests to keep his hands away from his pockets/waistband, he did not comply with Agent Ruiz's similar requests.

4

Detective Mower testified about his decision to not pat-down Mr. Sweets. He said that in his position as a drug investigator, he "… ha[s] to be able to speak with people in ways that other officers on their investigations don't have to." He testified that his "… overriding goal was to solicit information …" from Mr. Sweets, and that although he is "fearful" [for his safety] during drug investigations, he explained that not patting down Mr. Sweets "… was a risk that I perhaps mistakenly let slip by in order to further my investigation."

[¶12] For his part, Agent Ruiz testified that Mr. Sweets continued to reach for that area, and that Agent Ruiz was concerned about the safety of everyone present. When he learned that Detective Mower had not conducted a pat-down search, he went outside to talk with Mr. Sweets and immediately observed Mr. Sweets making movements toward his pants and waistband. He also noted Mr. Sweets' nervous behavior. According to Agent Ruiz, he decided to conduct a pat-down search to "… make sure there was no identifiable weapon on his person or being concealed."

[¶13] Based upon the testimony at trial, and the evidence presented, the district court properly concluded that Agent Ruiz was justified in conducting a warrantless pat-down search for officer safety reasons based upon the totality of the circumstances. Agent Ruiz's decision to conduct a pat-down search of Mr. Sweets was not unreasonable and was properly confined to what was minimally necessary to learn whether or not Mr. Sweets was armed by only quickly patting down Mr. Sweets' outer clothing, backing up, and asking Mr. Sweets what he had in his pockets. ("The pat-down search itself, however, must 'be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer.'" *Fender v. State*, 2003 WY 96, ¶ 22, 74 P.3d 1220, 1229 (Wyo. 2003), quoting *Perry v. State*, 927 P.2d 1158, 1164-65 (Wyo. 1996) (quoting *Terry*, 392 U.S. at 29, 88 S. Ct. at 1884)).

## CONCLUSION

[¶14] The denial of Mr. Sweets' Motion to Suppress Evidence is affirmed.

5