2003 WY 108

Vincent A. GOULART, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 02–100.

Supreme Court of Wyoming.

Sept. 5, 2003.

Representing Appellant: James A. Eddington of Torrington.

Representing Appellee: Hoke MacMillan, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Richard Rideout, Special Assistant Attorney General. Argument by Mr. Rideout.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

HILL, Chief Justice.

[¶ 1] Appellant, Vincent A. Goulart (Goulart), entered a conditional plea of nolo contendere [1] to the crime of committing an immoral or indecent act with a child who was his step-daughter (victim).[2] The conditions

---

1. W.R.Cr.P. 11(a)(1)(A)(B)(2) (emphasis added) provides:

**Rule 11. Pleas.**

(a) Alternatives.—

(1) In General.—A defendant may plead not guilty, not guilty by reason of mental illness or deficiency, guilty, or nolo contendere. If a defendant refuses to plead or if a defendant corporation fails to appear, the court shall enter a plea of not guilty.

(A) Nolo Contendere.—A defendant may plead nolo contendere only with the consent of the court. Such a plea shall be accepted by the court only after due consideration of the views of the parties and the interest of the public in the effective administration of justice.

(B) Mental Illness or Deficiency.—A plea of "not guilty by reason of mental illness or deficiency" may be pleaded orally or in writing by the defendant or the defendant's counsel at the time of the defendant's arraignment or at such later time as the court may for good cause permit. Such a plea does not deprive the defendant of other defenses and may be coupled with a plea of not guilty.

(2) Conditional Pleas.—**With the approval of the court and the consent of the attorney for the state, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judg-ment, to seek review of the adverse determination of any specified pretrial motion. A defendant who prevails on appeal shall be allowed to withdraw the plea.**

2. Wyo. Stat. Ann. § 14-3-105 (LexisNexis 2003) provides:

**§ 14-3-105. Immoral or indecent acts; penalty.**

(a) Except under circumstance constituting sexual assault in the first, second or third degree as defined by W.S. 6-2-302 through 6-2-304, any person knowingly taking immodest, immoral or indecent liberties with any child or knowingly causing or encouraging any child to cause or encourage another child to commit with him any immoral or indecent act is guilty of a felony. Except as provided by subsection (b) of this section, a person convicted under this section shall be fined not less than one hundred dollars ($100.00) nor more than one thousand dollars ($1,000.00) or imprisoned in the penitentiary not more than ten (10) years, or both.

(b) An actor convicted under subsection (a) of this section shall be punished by life imprisonment without parole if:

(i) The circumstances of the crime involve a victim who was under the age of sixteen (16) at the time of the offense and an actor who was at least four (4) years older than the victim; and

that Goulart wanted to appeal were that the district court erred in denying Goulart's motion to suppress statements made to the police, that a police officer "tainted" the victim's testimony by suggesting language to her during an interview, and that the district court erred in refusing to allow Goulart to introduce the testimony of the victim's sister (AG).

[¶ 2] We will affirm.

[¶ 3] Goulart poses the issues in these terms:

1. Were the defendant's rights pursuant to the Fifth and Fourteenth Amendments of the United States Constitution and Article 1, Section 6 of the Wyoming Constitution violated by the District Court's denial of the defendant's Motion to Suppress Tape recording?

2. When a police officer provides the terms "skin-to-skin," "vagina" and "pelvis" to a minor child making accusations of indecent liberties, is a competency hearing required under Wyoming Law?

3. Did the trial court commit reversible err[or] by denying the defendant the right to call [AG] as a witness?

The State, in turn, states these issues:

1. Whether the district court committed reversible error in denying [Goulart's] motion to suppress his statement made to officer Curtis?

2. Whether the district court committed reversible error in denying [Goulart's] motion to conduct a "competency hearing" on the victim's ability to testify?

3. Whether the district court committed reversible error in granting the State's motion to preclude [Goulart] from calling the victim's sister as a witness?

## FACTS

[¶ 4] Goulart was charged with one count of committing an immoral or indecent act

with the victim. The gravamen of the charge was that on or about October 4, 2000, Goulart touched the victim with his hand on her bare buttocks and that, later that same night, he touched her on her vaginal area, which was covered with clothing at the time. According to the victim, she and her younger brother were lying on their parents' bed watching TV when Goulart returned home at about midnight, after a night of drinking. The children's mother was away for the weekend. Goulart got in bed with the two children. The victim was wearing shorts and a T-shirt. The victim related that Goulart first rubbed her buttocks with his hand, placing his hand underneath her shorts. The victim then left that bedroom and went to her own room and got into the top bunk of a set of bunk beds. Goulart came downstairs and said she should come back to bed. She followed Goulart back to the parents' bed, whereupon Goulart used his hand to rub her vagina, placing his hand on top of her shorts. The victim said, "Daddy, please stop," and then lay down on the floor by the bed to sleep. The report of this incident to the police did not occur until several months later in February of 2001.

[¶ 5] On June 20, 2001, Goulart entered a plea of not guilty. On October 2, 2001, Goulart changed his plea to a plea of nolo contendere, reserving for appeal the issues we now have before us.

## DISCUSSION

**Motion to Suppress Statement to Police**

 [¶ 6] A trial court's ruling on a defendant's motion to suppress a statement on the grounds that it was made involuntarily is reviewed de novo. In conducting such a review, we defer to the trial court's findings of fact unless those findings are clearly erroneous. This Court considers all the evidence in the light most favorable to the trial court's

(ii) The actor has two (2) or more previous convictions for any of the following designated offenses, which convictions resulted from charges separately brought and which arose out of separate occurrences in this state or elsewhere:

(A) A conviction under W.S. 6–2–302 through 6–2–304 or a criminal statute containing the same or similar elements as a crime defined by W.S. 6–2–302 through 6–2–304;

(B) Repealed by Laws 1997, ch. 135, § 2, eff. July 1, 1997.

(C) A conviction under W.S. 14–3–105(a), or a criminal statute containing the same or similar elements as the crime defined by W.S. 14–3–105(a), if the circumstances of the crime involved a victim who was under the age of sixteen (16) at the time of the offense and an actor who was at least four (4) years older than the victim.

(c) As used in this section, "child" means a person under the age of eighteen (18) years.

determination because the trial court has the opportunity to hear the evidence and to assess the credibility of witnesses. The Fifth and Fourteenth Amendments to the United States Constitution, and Wyoming Constitution Article 1, §§ 6 and 11, require that confessions be voluntary. A statement that is obtained by coercion is not trustworthy and may not be used at trial against the person who made it. A defendant is deprived of the right to due process of law if an involuntary statement is admitted at his trial. A statement is considered to be voluntary if the defendant makes it of his own free and deliberate choice, and not because of intimidation, coercion or deception. The prosecution has the burden to prove, by a preponderance of the evidence, that a defendant's statement is voluntary. *Lara v. State*, 2001 WY 53, ¶ 9, 25 P.3d 507, ¶ 9 (Wyo.2001); *also see Hadden v. State*, 2002 WY 41, ¶ 17, 42 P.3d 495, ¶ 17 (Wyo.2002); and *Meek v. State*, 2002 WY 1, ¶ 13, 37 P.3d 1279, ¶ 13 (Wyo.2002).

[¶ 7] A capsule statement of Goulart's contentions in this regard is this: "The only issue is whether the degree of trickery, psychological pressure, threats, implied promises and inducements applied by the police officer in this case equate to involuntariness."

[¶ 8] The record shows that Goulart was asked to come to the police station in Torrington on February 20, 2001. The interview began at 10:00 a.m., and it lasted for about 90 minutes. Goulart came to the police station at the request of Police Officer Curtis, but Goulart was not under arrest, nor was he arrested the day of the interview. Goulart was given *Miranda* warnings before the interview commenced, and Officer Curtis testified that Goulart waived those rights and agreed to talk with him about the alleged crime. Goulart was not informed of the subject of the interview until after the interview was underway. Officer Curtis did not obtain a written *Miranda* waiver because he "had this on tape."[3] We note that the transcript of the tape does not include Goulart's responses indicating that he understood the *Miranda* warnings, though it does include his agreement to talk after the *Miranda* warnings were read to him. The tape itself is barely audible in this regard, but what sounds like "uh-hum" can be heard to most of the inquiries as to Goulart's understanding of his rights.

[¶ 9] Goulart relies principally upon our decision in *State v. Evans*, 944 P.2d 1120 (Wyo.1997), in structuring his argument. Indeed, that case is directly in point, although it is to the opposite effect. That is, in the *Evans* case a district court ordered that a statement given to the police be suppressed and, thus, our analysis focused on the evidence favorable to the district court's ruling that the prosecution had failed to meet its burden of demonstrating the voluntariness of the statement. *Id.*, at 1126–28. That same sort of analysis, of course, applies equally here. However, in this instance the district court concluded that the State did meet its burden of demonstrating that the statements obtained from Goulart were voluntary, as well as that the evidence presented by Goulart did not seriously refute the State's evidence.

[¶ 10] The district court found that Goulart was asked to come to the police department for an interview. Before the interview, Goulart was informed that the police were investigating an allegation that he had molested the victim. The police informed Goulart of his *Miranda* rights and, in light of those warnings, Goulart agreed to answer questions. Goulart took a cell phone to the interview with him and took a call on it during the interview process. In addition, at one point Goulart indicated that he was going to leave but was persuaded by Officer Curtis to stay and complete the interview. Although Officer Curtis was insistent and persistent in his questioning, he did not force Goulart to answer questions. Indeed, Officer Curtis told Goulart he should not confess to something he did not do. During the course of the interview, including one time after only a few minutes of questioning, Goulart conceded on several occasions that he might have touched his daughter accidentally, though he had no specific recollection of it. The district court

---

3. A written *Miranda* waiver constitutes "better" evidence than the tape-recorded waiver, and that is especially so in an instance such as this where the transcript does not clearly demonstrate the waiver, although the police officer's recollection was certain that it would.

concluded that Goulart had made his statements voluntarily after being given *Miranda* warnings. Further, Goulart was not in custody, and a reasonable person, given the circumstances, would have known that he was free to leave and free not to answer any questions.

[¶ 11] We have carefully reviewed the same materials that were available to the district court and, of course, we have done so considering all of the evidence in the light most favorable to the trial court's determination, because the trial court had the opportunity to hear the evidence and to assess the credibility of witnesses. We conclude that Goulart's statements were not the product of trickery, psychological pressure, threats, implied promises, and/or inducements used by the police officer. Thus, we also conclude that the trial court findings in this regard are not clearly erroneous, and we hold that the trial court did not err in denying the motion to suppress the statements at issue.

## Did the Trial Court Fail to Conduct a Required Competency Hearing

[¶ 12] The standard of review applicable to a competency hearing is clearly established:

We have held that when a child is called into the courtroom to testify, and the child's competency is called into question by either party, it is the duty of the trial court to make an independent examination of the child to determine competency, and that determination will not be disturbed unless shown to be clearly erroneous. *English v. State*, 982 P.2d 139, 145 (Wyo. 1999). In *English,* we also held that an assertion that a child's testimony was tainted could best be comprehended as a part of the competency hearing and that a separate taint hearing is not required. 982 P.2d at 146. In *English,* we established that the requirement that a competency hearing on the issue of "taint," based on an assertion that the child's statements were the product of suggestive or coercive interview techniques, or some other potentially improper influence, is triggered whenever a party presents the court with "some evidence" that a child witness is incompetent. 982 P.2d at 146–47; *Ryan v. State,* 988 P.2d 46, 58 (Wyo.1999).

*Alicea v. State,* 13 P.3d 693, 697 (Wyo.2000) (footnote omitted); *also see Billingsley v. State,* 2003 WY 61, ¶¶ 9–10, 69 P.3d 390, ¶¶ 9–10 (Wyo.2003); and *Wilde v. State* 2003 WY 93, ¶ 7, 74 P.3d 699, ¶ 7 (Wyo.2003).

[¶ 13] At its September 14, 2001 hearing on motions, the district court heard Goulart's motion concerning the competency of the victim. That motion was based on the theory that Officer Curtis "tainted" her testimony by suggesting the words she should use to describe what had happened to her, in particular, the words "skin-on-skin" with reference to Goulart rubbing his hand on the victim's bare buttocks, and the words "vagina" and "pelvis." At the preliminary hearing, defense counsel cross-examined the victim about the interview process used by Officer Curtis, and the victim admitted that Curtis helped her find words to express what she was trying to say. That testimony was tape-recorded and a transcript of it is a part of the record on appeal, as well as a part of the evidence the district court utilized in deciding the instant motion. At the hearing, Goulart's attorney called Officer Curtis as a witness and examined him about the interview with the victim. As a prefatory matter, Curtis was asked if the interview was recorded and he answered that the interview was neither tape-recorded nor video recorded because two officers were present to observe the interview. When the examination of Officer Curtis was complete, Goulart's attorney announced to the district court, "I have no more evidence, just argument." The argument presented by defense counsel was based on the case *English v. State,* 982 P.2d 139 (Wyo.1999), and, at the conclusion of that argument, defense counsel asked "that the written statement of [the victim] and the testimony [of the victim at the preliminary hearing] be excluded."

[¶ 14] The district court then made these oral findings:

With respect to the competence or any taint, Rule [WRE] 601 provides that all witnesses are competent unless the rules provide otherwise; and the Court then starts with the presumption, or at least with the suggestion under the rule, that this witness is competent.

Her competence and the lack of any taint of suggestion or ideas planted in her mind by Officer Curtis are also found in the fact that there were not leading questions asked, that she was in the fifth grade, 11 years old, that she seemed intelligent, that she responded appropriately to many questions, that she wrote out a story from beginning to end without pausing and without any input from the interviewer.

The Court finds that the consistency in her story between the verbal story and her written story and her testimony at preliminary hearing is an indication of its being independent and voluntary and being not suggested to by Mr. Curtis at the particular interview that he was.

The Court does note that this individual, this witness, used two or three terms that may have been beyond her years and may have not, but the court finds the testimony here today is very specific, that the witness had a difficult time of getting from her vocabulary the correct anatomical word or way to describe—method to describe something, and so she was supplementing that description with physical demonstration, or showing or pointing at something.

And it was entirely reasonable and appropriate for the officer to provide that word once she identified the body part or the location of wherever she is talking about.

It would be quite a different thing if the officer started out suggesting to her that she was touched in a certain place or that it went some way, and then gave her the anatomical word for that place; but that's not what happened here. Instead, the witness described what happened, struggled for a word, and Officer Curtis simply gave it to her.

That's not a taint.

[¶ 15] The district court asked counsel if there was anything further and both sides indicated that there was not.

[¶ 16] The record on appeal supports only one conclusion and that is that the district court held a competency hearing as contemplated by *English,* and that the district court's conclusion that the victim was competent, and that her testimony was not tainted, is not clearly erroneous. Indeed, such a conclusion is wholly consistent with the evi-

dentiary material brought to the district court's attention by Goulart. We hold that the district court did not err with respect to this matter.

## Did the District Court Err by Denying Goulart the Right to Call AG as a Witness

[¶ 17] We have repeatedly articulated the standard of review for evidentiary rulings:

> Evidentiary rulings are within the sound discretion of the trial court and include determinations of the adequacy of foundation and relevancy, competency, materiality, and remoteness of the evidence. This court will generally accede to the trial court's determination of the admissibility of evidence unless that court clearly abused its discretion.

> *Solis v. State,* 981 P.2d 34, 36 (Wyo.1999) (citation omitted). We have described the standard of an abuse of discretion as reaching the question of the reasonableness of the trial court's choice. Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. "In the absence of an abuse of discretion, we will not disturb the trial court's determination." [*Griswold v. State,* 2001 WY 14, ¶ 7, 17 P.3d 728, ¶ 7 (Wyo.2001).] The burden is on the defendant to establish such abuse.

*Skinner v. State,* 2001 WY 102, ¶ 25, 33 P.3d 758, ¶ 25 (Wyo.2001), cert. denied, 535 U.S. 994, 122 S.Ct. 1554, 152 L.Ed.2d 477 (2002) (some citations omitted).

*Willis v. State,* 2002 WY 79, ¶ 16, 46 P.3d 890, ¶ 16 (Wyo.2002).

[¶ 18] Goulart proposed to call his older step-daughter, AG, as a witness. We will not set out in detail the reasoning behind this argument because the district court left open the possibility that he would admit the testimony at trial. The gist of the offer of proof was that AG would testify about the good and continuing relationship she had with Goulart both before and after the incident of indecency with the victim, as well as that she did not believe the victim. The district

court's oral ruling on this issue makes clear that although it deemed that the proposed testimony "would not make the determination of any fact at issue in this case more or less probable":

There are many opportunities, however, when her testimony might be or could be—anyhow, her testimony might be appropriate rebuttal, certainly might happen, if there was something particularly said that she knew about.

[¶ 19] We conclude that Goulart has not carried his burden of establishing that the district court abused its discretion in making the pretrial determination it made with respect to this proffered evidence.

## CONCLUSION

[¶ 20] For the reasons set out above, the judgment and sentence of the district court are affirmed.