2004 WY 95

**James Allen MORGAN, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 02–263.

Supreme Court of Wyoming.

Aug. 13, 2004.

June 26, 2003, and the denial order was entered on June 27, 2003.

Representing Appellant: Ken M. Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; Ryan R. Roden, Senior Assistant Appellate Counsel. Argument by Mr. Roden.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Daniel M. Fetsco, Assistant Attorney General. Argument by Mr. Fetsco.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

GOLDEN, Justice.

[¶1] Appellant James Allen Morgan entered a conditional plea of guilty to two counts of possession of marijuana. He reserved his right to appeal the district court's denial of his motion to suppress the evidence seized during, and as the result of, the search of his disabled vehicle. Specifically,

Morgan complains that a drug dog sniff of the exterior of the vehicle was an illegal search under the Fourth Amendment to the United States Constitution and Article 1, Section 4 of the Wyoming Constitution. He also claims the State failed to establish the reliability of the canine. This Court concludes that the canine sniff was not a search under the Fourth Amendment to the United States Constitution and that Morgan did not present a sufficient state constitutional analysis. We further hold that Morgan did not properly preserve his right to contest the State's failure to establish the reliability of the drug dog. Consequently, we affirm.

## ISSUES

[¶ 2] Morgan articulates two issues on appeal:

I. Whether the district court erred in denying appellant's motion for suppression of all evidence discovered by and because of the drug dog's initial sniff of appellant's broken down vehicle?

II. Whether the State failed to establish that the drug dog use[d] by Patrolman Peech was reliable?

Appellee State of Wyoming phrases the issues a little differently:

I. Did the district court properly deny appellant's motion to suppress evidence?

II. Was the State required to establish that the drug dog was reliable, and was such claim preserved by appellant's conditional guilty plea?

## FACTS

[¶ 3] On November 18, 2001, Morgan and Daniel Fisher were traveling northbound on Interstate 25 in Laramie County. Their vehicle experienced mechanical difficulties, and they pulled to the side of the road. Highway Patrolman Benjamin Peech proceeded to the scene after receiving a call concerning the disabled vehicle. Morgan and Fisher identified themselves to the patrolman and asked him to take them to a nearby truck stop.

[¶ 4] Patrolman Peech thought he recalled Morgan's name from a prior drug intelligence report. Consequently, after he left the men at the truck stop, he asked dispatch to run criminal history checks on them. The criminal history checks revealed that Morgan had a prior drug conviction. Patrolman Peech requested that a canine unit from the Laramie County Sheriff's Department meet him at the disabled vehicle. Deputy Sheriff Rivers commanded his drug dog to sniff around the exterior of the vehicle, and the drug dog alerted.

[¶ 5] Patrolman Peech returned to the truck stop to visit with Morgan and Fisher, while Deputy River and the dog remained with the vehicle. A third officer, Deputy Camery, joined Patrolman Peech at the truck stop. The officers located Morgan and Fisher in the coffee shop, and Patrolman Peech asked Morgan to accompany him outside. The patrolman informed Morgan that he thought he recalled his name from a drug intelligence report and that the drug dog had alerted to the vehicle. Morgan denied that there were any controlled substances in the vehicle. Patrolman Peech then spoke with Fisher. Fisher admitted that there was a small amount of marijuana and a marijuana pipe in the vehicle. He also consented to a search of his person, during which Patrolman Peech discovered a small amount of methamphetamine in his wallet.

[¶ 6] Morgan and Fisher agreed to accompany the officers back to the disabled vehicle. Morgan rode with Deputy Camery, and Fisher rode with Patrolman Peech. During the trip, Fisher again admitted that there were drug paraphernalia and small amounts of controlled substances in the vehicle. When they arrived at the vehicle, Patrolman Peech asked Morgan for the keys, and he complied. Patrolman Peech unlocked the doors, and Deputy Rivers directed the dog to enter the vehicle. The dog alerted to a red and black duffle bag which belonged to Morgan. The patrolman searched the bag and discovered a plastic bag containing eight ounces of marijuana.

[¶ 7] The State charged Morgan with one count of possession of marijuana with intent to deliver, in violation of Wyo. Stat. Ann. § 35–7–1031(a)(ii), and one count of possession of more than three ounces of marijuana, in violation of § 35–7–1031(c)(iii). Morgan

filed a motion to suppress the evidence gathered during the search of his person, the vehicle, and his luggage. He argued that the canine sniff of the exterior of his vehicle amounted to a search, which was not justified by probable cause or a reasonable articulable suspicion of criminal ·conduct. The district court held a hearing and denied Morgan's motion to suppress.

[¶ 8] Morgan and the State entered into a plea agreement in which Morgan conditionally pled guilty to the felony charge of possession of more than three ounces of marijuana and a misdemeanor charge of possession of marijuana. Morgan reserved his right to appeal the district court's denial of his motion to suppress. The district court sentenced Morgan to serve a suspended sentence of three to five years in prison for the felony and sixty days in county jail for the misdemeanor. Morgan filed a timely notice of appeal.

## DISCUSSION

### A. *Standard of Review*

[¶ 9] Our standard for reviewing a district court's decision on a motion to suppress has been stated as follows:

Findings on factual issues made by the district court considering a motion to suppress are not disturbed on appeal unless they are clearly erroneous. *Wilson v. State*, 874 P.2d 215, 218 (Wyo.1994). Since the district court conducts the hearing on the motion to suppress and has the opportunity to assess the credibility of the witnesses, weigh the evidence, and make the necessary inferences, deductions, and conclusions, evidence is viewed in the light most favorable to the district court's determination. *Id.* The issue of law, whether an unreasonable search or seizure has occurred in violation of constitutional rights, is reviewed de novo. *Id.; Brown v. State*, 944 P.2d 1168, 1170–71 (Wyo.1997).

*McChesney v. State*, 988 P.2d 1071, 1074 (Wyo.1999); *see also Damato v. State*, 2003 WY 13, ¶ 7, 64 P.3d 700, ¶ 7 (Wyo.2003); *Meadows v. State*, 2003 WY 37, ¶ 14, 65 P.3d 33, ¶ 14 (Wyo.2003).

### B. *Dog Sniff*

[¶ 10] Morgan argues that the canine's sniff of the exterior of his vehicle amounted to a search under the Fourth Amendment to the United States Constitution. He claims, therefore, that the officer should have had probable cause or, at least, a reasonable articulable suspicion of criminal conduct before he ordered the canine sniff. The State maintains that the canine sniff was not a search entitled to Fourth Amendment protection.

[¶ 11] Although this Court has earlier decided cases involving canine sniffs, *see e.g., Damato; Putnam v. State*, 995 P.2d 632 (Wyo.2000); *State v. Welch,* 873 P.2d 601 (Wyo.1994), this is the first case which squarely presents the issue whether or not a canine sniff of the exterior of a vehicle amounts to a search. In *Damato* and *Welch,* the appellants complained that they had been illegally seized after traffic stops when the authorities made them wait for a dog to conduct a sniff test of their automobiles. *Damato,* ¶ 15; *Welch,* 873 P.2d at 605. There was no discussion, in either case, of whether or not a canine sniff amounts to a search. *Id.* In *Putnam,* we rhetorically broached the issue of the propriety of a dog sniff, but ultimately concluded that the appellant did not have standing to contest the search of the vehicle. 995 P.2d at 639. In the case at bar, Morgan was not detained while the canine sniff took place, and he has standing to contest the search of the vehicle. Consequently, the question of whether or not a canine sniff around the exterior of a vehicle amounts to a constitutionally protected search is directly at issue in this case.

[¶ 12] The Fourth Amendment to the United States Constitution protects "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The beginning point for our analysis of an issue involving the Fourth Amendment to the United States Constitution is, of course, the United States Supreme Court. In *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), Place argued that he was subjected to an illegal search and seizure under the Fourth

Amendment when law enforcement authorities detained his luggage for ninety minutes in a public airport. During the detention of his luggage, the authorities had a trained narcotics dog sniff the luggage. *Id.* at 699, 103 S.Ct. at 2640. The Court ruled that the authorities' seizure of Place's luggage violated the Fourth Amendment. *Id.* at 710, 103 S.Ct. at 2646. Nevertheless, in the course of reaching that decision, the United States Supreme Court opined that a canine sniff of luggage in an airport was not a search within the meaning of the Fourth Amendment. *Id.* at 706–07, 103 S.Ct. at 2644–45. The High Court reasoned:

The Fourth Amendment protects people from unreasonable government intrusions into their legitimate expectations of privacy. We have affirmed that a person possesses a privacy interest in the contents of personal luggage that is protected by the Fourth Amendment. A "canine search" by a well-trained detention dog, however does not require opening the luggage. It does not expose noncontraband items that otherwise would remain hidden from public view, as does, for example, an officer's rummaging through the contents of the luggage. Thus, the manner in which information is obtained through this investigative technique is much less intrusive than a typical search. Moreover, the sniff discloses only the presence or absence of narcotics, a contraband item. Thus, despite the fact that the sniff tells the authorities something about the contents of the luggage, the information obtained is limited. This limited disclosure also ensures that the owner of the property is not subjected to the embarrassment and inconvenience entailed in less discriminate and more intrusive investigative methods.

In these respects, the canine sniff is *sui generis.* We are aware of no other investigative procedure that is so limited both in the manner in which the information is obtained and in the content of the information revealed by the procedure. Therefore, we conclude that the particular course of investigation that the agents intended to pursue here—exposure of the respondent's luggage, which was located in a public place, to a trained canine—did not constitute a "search" within the meaning of the Fourth Amendment.

*Id.* (citations and quotation marks omitted).

[¶ 13] Just a year later, the United States Supreme Court reiterated its position that investigative techniques which are limited to determining the presence or absence of illegal items are not searches within the purview of the Fourth Amendment. In *United States v. Jacobsen,* 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984), the Court concluded that a field test to determine whether cocaine was present did not infringe upon a reasonable expectation of privacy. *Id.* at 122–24, 104 S.Ct. at 1661–62. Thus, the Supreme Court has clearly stated that when a test reveals only the absence or presence of contraband items, it is not a search because it does not intrude upon a legitimate privacy interest. *Id.; Place,* 462 U.S. at 706–07, 103 S.Ct. at 2644. *See also, United States v. Morales–Zamora,* 914 F.2d 200, 204–05 (10th Cir. 1990); *United States v. Colyer,* 878 F.2d 469, 476–77 (D.C.Cir.1989).

[¶ 14] Many commentators and legal scholars have criticized or questioned the Supreme Court's statement in *Place* that the dog sniff of the luggage was not a search. *See, e.g.,* Hope Walker Hall, *Sniffing out the Fourth Amendment: United States v. Place—Dog Sniffs—Ten Years Later,* 46 Me. L.Rev. 151, 152 (1994); 1 Wayne L. Lafave, *Search and Seizure* § 2.2(f) (3d. ed.1996). They have called upon federal courts of appeal to dismiss the conclusion as dictum. *Id.* Nevertheless, federal circuit courts, including Wyoming's own Tenth Circuit Court of Appeals, continued to rely upon and follow the *Place* ruling. *See, e.g., United States v. Hunnicutt,* 135 F.3d 1345, 1350 (10th Cir. 1998); *United States v. Ludwig,* 10 F.3d 1523, 1527 (10th Cir.1993); *Morales–Zamora,* 914 F.2d at 203–04.

[¶ 15] The Supreme Court finally put to rest the confusion over this issue when it reaffirmed that a canine sniff is not a search in *City of Indianapolis v. Edmond,* 531 U.S. 32, 40, 121 S.Ct. 447, 453, 148 L.Ed.2d 333 (2000). In *Edmond,* the Supreme Court specifically held that a drug dog sniff of stopped

cars at a drug interdiction checkpoint did not amount to a search. *Id.* The Court stated:

The fact that officers walk a narcotics-detection dog around the exterior of each car at the Indianapolis checkpoints does not transform the seizure into a search. Just as in *Place,* an exterior sniff of an automobile does not require entry into the car and is not designed to disclose any information other than the presence or absence of narcotics. Like the dog sniff in *Place,* a sniff by a dog that simply walks around a car is much less intrusive than a typical search.

*Id.* (citations and quotation marks omitted).

[¶ 16] Despite the Supreme Court's clear language in *Edmond,* Morgan argues that *Kyllo v. United States,* 533 U.S. 27, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001), undermines the *Place* decision and supports his argument that the canine sniff of his vehicle amounted to an unconstitutional search. In *Kyllo,* a law enforcement agent suspected that Kyllo was growing marijuana in his home. *Id.* at 29, 121 S.Ct. at 2041. High-intensity lamps are typically required in order to grow marijuana indoors. *Id.* The agent, therefore, used a thermal imager to scan Kyllo's home to determine whether unusual amounts of infrared radiation were emitting from the home. *Id.* at 29–30, 121 S.Ct. at 2041. The scan was performed from outside of the home and revealed that the roof over the garage and a side wall of the home were "relatively hot compared to the rest of the home and substantially warmer than neighboring homes...." *Id.* at 30, 121 S.Ct. at 2041. Based on the results of the scan and other information, the agent procured a search warrant to physically search the home. *Id.*

[¶ 17] Kyllo appealed the denial of his motion to suppress the evidence on the basis that the thermal imaging scan amounted to an illegal search of his home. The United States Supreme Court concluded that the thermal imaging scan was a search. *Id.* at 34–35, 121 S.Ct. at 2043. The Supreme Court reasoned:

We think that obtaining by sense-enhancing technology any information regarding the interior of the home that could not otherwise have been obtained without physical "intrusion into a constitutionally protected area," *Silverman* [*v. United States* ], 365 U.S. [505] at 512, [81 S.Ct. 679, 5 L.Ed.2d 734 (1961),] constitutes a search—at least where (as here) the technology in question is not in general public use. This assures preservation of that degree of privacy against government that existed when the Fourth Amendment was adopted.

533 U.S. at 34, 121 S.Ct. at 2043.

[¶ 18] The *Kyllo* decision does not undermine the validity of *Place* or *Edmond* or mandate a finding that the canine sniff of the exterior of Morgan's vehicle was a search. The differences between a thermal imaging scan of a person's home and a canine sniff of the exterior of an automobile are apparent. A person's home is sacrosanct in Fourth Amendment jurisprudence. " 'At the very core' of the Fourth Amendment 'stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.' " *Kyllo,* 533 U.S. at 31, 121 S.Ct. at 2041 (quoting *Silverman,* 365 U.S. at 511, 81 S.Ct. at 683). Although an automobile is entitled to limited Fourth Amendment protection, the Supreme Court has repeatedly recognized there is a reduced expectation of privacy with motor vehicles. *See, e.g., Edmond,* 531 U.S. at 40, 121 S.Ct. at 453; *Florida v. White,* 526 U.S. 559, 563–64, 119 S.Ct. 1555, 1558, 143 L.Ed.2d 748 (1999); *California v. Carney,* 471 U.S. 386, 390–93, 105 S.Ct. 2066, 2068–70, 85 L.Ed.2d 406 (1985); *Carroll v. United States,* 267 U.S. 132, 153, 45 S.Ct. 280, 285, 69 L.Ed. 543 (1925). Moreover, the United States Supreme Court emphasized in *Place* and *Edmond* that a canine sniff is limited to the determination of the existence or nonexistence of contraband. *Place,* 462 U.S. at 707, 103 S.Ct. at 2644–45; *Edmond,* 531 U.S. at 40, 121 S.Ct. at 453. In contrast, the thermal imaging scan in *Kyllo* revealed the presence or absence of infrared radiation, which is not, in and of itself, illegal. Federal law, therefore, clearly holds that Fourth Amendment protections do not extend to canine sniffs of the exterior of an automobile. We conclude, therefore, that Morgan was not subjected to

a search protected by the Fourth Amendment when Patrolman Peech ordered the canine sniff of his vehicle.

[¶ 19] Morgan also argues that Article 1, Section 4, of the Wyoming Constitution provides greater protection than the federal constitution. Article 1, Section 4, states:

The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated, and no warrant shall issue but upon probable cause, supported by affidavit, particularly describing the place to be searched or the person or thing to be seized.

Relying on decisions from other states, Morgan insists that, under our state Constitution, a canine sniff is a search, subject to constitutional protection. It is true that some states have interpreted their state constitutions as providing broader protections than those guaranteed by the Fourth Amendment. *See, e.g., Commonwealth v. Rogers,* —— Pa. ——, 849 A.2d 1185, 1190 (2004); *State v. Tackitt,* 315 Mont. 59, 67 P.3d 295, 300 (2003); *Commonwealth v. Martin,* 534 Pa. 136, 626 A.2d 556, 559–60 (1993); *State v. Pellicci,* 133 N.H. 523, 580 A.2d 710, 715 (1990); *People v. Dunn,* 77 N.Y.2d 19, 563 N.Y.S.2d 388, 564 N.E.2d 1054, 1057 (1990); *Pooley v. State,* 705 P.2d 1293, 1311 (Alaska Ct.App.1985). Those states have ruled that canine sniffs are included within the category of searches protected by their state constitutions. *Id.*

[¶ 20] While this Court is certainly open to an argument that Article 1, Section 4, of the Wyoming Constitution provides greater protection against unreasonable searches than the Fourth Amendment, Morgan did not present a sufficient state constitutional analysis to persuade us to consider that issue in this case. We have repeatedly directed that, in order for this Court to undertake an independent state constitutional analysis, the appellant must "use a precise and analytically sound approach and provide us with the proper arguments and briefs to ensure the future growth of this important area of law." *Saldana v. State,* 846 P.2d 604, 624 (Wyo. 1993) (Golden, J., concurring). *See also, Gronski v. State,* 910 P.2d 561, 565–66 (Wyo.

1996); *Dworkin v. LFP, Inc.,* 839 P.2d 903, 909 (Wyo.1992).

[¶ 21] In this case, Morgan simply relies on the decisions of other states in arguing for a broad interpretation of Wyoming's constitutional protections against unreasonable searches and seizures. That method does not satisfy our specific requirements. Therefore, we reserve, for another time, the question of whether Article 1, Section 4 of our state Constitution provides greater protection from warrantless canine sniffs than the Fourth Amendment.

## C. *Reliability of Drug Dog*

[¶ 22] In his second issue, Morgan argues that the drug dog alert was not probable cause to justify a warrantless search of his vehicle because the State did not establish that the dog was reliable. The State argues that Morgan failed to preserve this issue when he entered his conditional plea of guilty in the district court.

[¶ 23] In general, when a criminal defendant enters a plea of guilty to a charge, he waives appellate review of all non-jurisdictional issues. *Bailey v. State,* 12 P.3d 173, 177 (Wyo.2000); *Smith v. State,* 871 P.2d 186, 188 (Wyo.1994). "An exception to this rule can be found in W.R.Cr.P. 11(a)(2), which allows a defendant to plead guilty while reserving the right to seek review on appeal of any specified pretrial motion." *Bailey,* 12 P.3d at 177. W.R.Cr.P. 11(a)(2) states:

(2) Conditional Pleas.—With the approval of the court and the consent of the attorney for the state, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to seek review of the adverse determination of any specified pretrial motion. A defendant who prevails on appeal shall be allowed to withdraw the plea.

[¶ 24] In *Bailey,* we ruled that a conditional plea of guilty does not provide *carte blanche* permission for the appellant to present any and all arguments on appeal. 12 P.3d at 177–78. Instead, the appellant may only raise those issues on appeal which were

clearly called to the attention of the district court. *Id.; see also, Elder v. Jones,* 608 P.2d 654, 660 (Wyo.1980). In other words, "[w]e will not consider non-jurisdictional issues on appeal unless they have been raised before the lower court with at least a minimum effort to present a cogent legal argument." *Bailey,* 12 P.3d at 178.

[¶ 25] Morgan's motion to suppress and his argument at the suppression hearing focused exclusively on whether or not the dog sniff was a search. He did not address the probable cause issue and did not challenge the State's failure to establish foundation for the reliability of the dog. Under W.R.Cr.P. 11(a)(2) and the teachings of *Bailey,* when Morgan pled guilty, he only preserved the issues raised in his suppression motion. Consequently, because Morgan did not contest the reliability of the drug dog or raise the probable cause issue in the district court, he waived his right to make those arguments on appeal.

## CONCLUSION

[¶ 26] The district court properly concluded that a dog sniff is not a search under the Fourth Amendment to the United States Constitution. We will not consider, in this case, whether Article 1, Section 4 of the Wyoming Constitution should be interpreted as including a dog sniff within its definition of unreasonable searches because Morgan failed to present a sufficient state constitutional analysis. Finally, Morgan waived his right to contest the State's reliance on the dog's alert as establishing probable cause for the physical search when he failed to present that issue to the district court.

[¶ 27] Affirmed.