2005 WY 34

**Anthony J. LINDSAY, Appellant (Defendant),**

*v.*

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 04–52.**

Supreme Court of Wyoming.

March 28, 2005.

· Representing Appellant: Kenneth M. Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; and Marion Yoder, Senior Assistant Public Defender.

Representing Appellee: Patrick J. Crank, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Georgia L. Tibbetts, Senior Assistant Attorney General.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, JJ., and STEBNER, D.J., Retired.

· STEBNER, District Judge, Retired.

[¶ 1] Appellant, Anthony J. Lindsay, entered a conditional plea of nolo contendere to possession of methamphetamine in violation of Wyo. Stat. Ann. § 35–7–1031(c) (LexisNexis 2003). On appeal, Lindsay asserts that evidence obtained from the search of his person upon his arrest, after a traffic stop, should have been suppressed. Finding that the search of Lindsay's person was proper, we affirm.

## FACTS[1]

[¶ 2] On July 2, 2003, at 3:28 p.m., Trooper Mrnsy pulled over the vehicle that Lind-

---

1. Many facts in this case were formally stipulated to by the parties. In addition, the parties pre-

say was driving because he witnessed that vehicle following another automobile too closely when apparently attempting to pass in a "no-pass" zone.[2] During Trooper Mrnsy's initial inquiries, he learned that the vehicle Lindsay was driving was a rental car that was to be driven solely in California and only by Paula Griego, who Lindsay asserted was his mother, who was not in the vehicle. Trooper Mrnsy also obtained the driver's license of both Lindsay and a male passenger riding in the vehicle.[3]

[¶ 3] Based on the rental car situation and Lindsay's responses to questions involving his travel plans, Trooper Mrnsy asked if he could search the vehicle. Lindsay refused this request. Subsequently, Trooper Mrnsy asked dispatch to check on the status of the drivers' licenses of Lindsay and the male passenger in the vehicle and requested that a drug dog be sent to the scene. At 3:36 p.m., it was learned that the driver's license of Lindsay was suspended. However, dispatch could not advise Trooper Mrnsy of the exact reason for suspension. A minute later, Trooper Mrnsy found it necessary to waive away an automobile, from the traffic stop scene, that had been traveling with the vehicle driven by Lindsay.

[¶ 4] Trooper Mrnsy again asked Lindsay if he could search the vehicle and Lindsay again refused. Trooper Mrnsy then asked Lindsay to accompany him to his patrol vehicle to which Lindsay complied. Lindsay further advised Trooper Mrnsy that he did not have any weapons or drugs in his possession.

[¶ 5] Twelve minutes after the stop, Trooper Mrnsy asked if Lindsay was financially able to pay a $410.00 bond on a citation for driving while his license was under suspension. Over the next several minutes, Trooper Mrnsy and Lindsay discussed how Lindsay might pay the bond amount and the rental car situation. Lindsay also provided

Trooper Mrnsy with information necessary to issue Lindsay a citation for driving while under suspension. At 3:54 p.m., dispatch informed Trooper Mrnsy that the driver's license of Lindsay was suspended for insurance reasons. Ultimately, Trooper Mrnsy reduced the citation for driving under suspension by $10.00 indicating that Lindsay was wearing his seat belt, although Lindsay was not wearing his seat belt when pulled over. Lindsay signed the driving under suspension citation and Trooper Mrnsy collected the necessary bond from Lindsay.

[¶ 6] At 4:02 p.m., Trooper Mrnsy spoke with his supervisor via cellular telephone for five minutes. Trooper Mrnsy stated that he telephoned his supervisor to obtain advice on how to handle the situation. During the conversation, Trooper Mrnsy's supervisor apparently suggested that Trooper Mrnsy consider whether Lindsay had violated Wyoming's unauthorized use of a vehicle statute and further assisted Trooper Mrnsy with respect to other issues surrounding the traffic stop. Trooper Mrnsy indicated during his testimony at the suppression motion hearing that he had never before charged a person with the unauthorized use of a vehicle.

[¶ 7] After this telephone conversation, Trooper Mrnsy asked to review the rental car agreement again. Trooper Mrnsy then began to prepare the warning citation for following too closely. Forty-eight minutes into the traffic stop, the warning citation was issued to Lindsay.

[¶ 8] Fifty minutes into the traffic stop, Trooper Mrnsy asked dispatch to contact the rental car company to determine how it wanted to deal with the situation. Initially, the rental car company did not want to file charges but simply wanted the car seized. However, the rental car company was informed that the car could not be seized unless the rental car was reported as stolen.[4]

sented a stipulated exhibit list to the district court. Additional facts contained herein are gleaned from transcripts of hearings held in this matter and other documents contained within the record on appeal.

2. All time designations, as well as, elapsed time denotations are approximate in nature.

3. At this time, the male passenger of the vehicle advised Trooper Mrnsy that his driver's license had expired.

4. During this time, another Trooper with a drug dog arrived at the scene. Lindsay again refused to allow the Troopers to search the vehicle upon request. A drug dog sniff of the outside of the vehicle was then conducted, but the drug dog did

At approximately 4:45 p.m., the rental car company advised that it was going to report the vehicle as stolen.

[¶ 9]   Trooper Mrnsy's supervisor then requested over the radio that Trooper Mrnsy telephone him.  Trooper Mrnsy complied and spoke with his supervisor via cellular telephone for a few minutes.  Lindsay was then arrested for unlawful use of the vehicle one hour and sixteen minutes into the traffic stop.

[¶ 10]   Thereafter,   Lindsay   advised Trooper Mrnsy that he was carrying a concealed loaded weapon.  A loaded and chambered Walther P38 9 mm pistol without the safety engaged was located on Lindsay's person upon a pat-down search.  A later more thorough search of Lindsay, after he was arrested but while he was still at the scene of the traffic stop, rendered three glass pipes used to smoke methamphetamine and 12.4 grams of methamphetamine.  As a result, Lindsay was charged with the unlawful possession of methamphetamine.

[¶ 11]   Lindsay filed a motion to suppress the methamphetamine evidence found in his possession.  After hearing, the district court denied the motion.  Lindsay later pled nolo contendere to the methamphetamine charge conditioned on his right to appeal.  This appeal followed.

### STANDARD OF REVIEW

[¶ 12]   We reiterated in *Guzman v. State,* 2003 WY 118, ¶ 11, 76 P.3d 825, ¶ 11 (Wyo. 2003) (quoting *Hughes v. State,* 2003 WY 35, ¶ 10, 65 P.3d 378, ¶ 10 (Wyo.2003)):

> When reviewing a trial court's ruling on a motion to suppress, we apply the following standard:

> > We generally do not disturb evidentiary rulings made by a trial court unless the trial court abused its discretion. *Wilson v. State,* 874 P.2d 215, 218 (Wyo.1994). In reviewing a trial court's ruling on a

motion to suppress evidence, we do not interfere with the trial court's findings of fact unless the findings are clearly erroneous.  *Gehnert v. State,* 956 P.2d 359, 361 (Wyo.1998).  We view the evidence in the light most favorable to the trial court's determination because the trial court has an opportunity at the evidentiary hearing to assess "the credibility of the witnesses, weigh the evidence, and make the necessary inferences, deductions, and conclusions." *Id.* The constitutionality of a particular search or seizure is, however, a question of law that we review de novo.  *Id.; Jones v. State,* 902 P.2d 686, 690 (Wyo.1995).

*Martindale v. State,* 2001 WY 52, ¶ 9, 24 P.3d 1138, ¶ 9 (Wyo.2001) (quoting *Putnam v. State,* 995 P.2d 632, 635 (Wyo. 2000)).

See also, *Campbell v. State,* 2004 WY 106, ¶ 9, 97 P.3d 781, ¶ 9 (Wyo.2004).

### DISCUSSION

#### Waiver Via Entry of Plea.

█   [¶ 13]   The State initially argues that Lindsay waived appellate review of all non-jurisdictional claims when he pled nolo contendere to the charge.  We do not find the State's argument to be persuasive. It is true that we have consistently held that a plea of guilty or nolo contendere generally waives appellate review of all non-jurisdictional claims, which may include constitutional challenges to pre-trial proceedings.  *Morgan v. State,* 2004 WY 95, ¶ 23, 95 P.3d 802, ¶ 23 (Wyo.2004); *Bailey v. State,* 12 P.3d 173, 177 (Wyo.2000); *Smith v. State,* 871 P.2d 186, 188 (Wyo.1994).  However, an exception to this rule is found in W.R.Cr.P. 11(a)(2) which allows a defendant to plead guilty or nolo contendere while reserving the right to seek review on appeal of any specified pretrial motion.  *Morgan,* ¶ 23 (citing *Bailey,* 12 P.3d at 177); W.R.Cr.P. 11(a)(2).[5]  See also generally, *Gordon v. State,* 2004 WY 105, 97 P.3d

---

not detect any drugs.  This occurred one hour and twelve minutes after the stop of the vehicle.

5.   W.R.Cr.P. 11(a)(2) provides:

(2) Conditional Pleas.—With the approval of the court and the consent of the attorney for the state, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to seek review of the adverse determination of any specified pretrial motion.  A defendant who prevails on appeal shall be allowed to withdraw the plea.

64 (Wyo.2004); *Goulart v. State,* 2003 WY 108, 76 P.3d 1230 (Wyo.2003); *Hart v. State,* 2002 WY 163, 57 P.3d 348 (Wyo.2002).

■ [¶ 14] Lindsay expressly conditioned his plea of nolo contendere to the methamphetamine charge upon his ability to bring this appeal. This conditional plea was accepted by the district court with approval by the prosecutor. Thus, Lindsay cannot be said to have waived his right to bring those instant issues before this court through entry of his nolo contendere plea.

### State Constitutional Issues.

[¶ 15] Lindsay contends that the methamphetamine evidence found on his person, after his arrest, is a product of an illegal detention unsupported by reasonable articulable suspicion thus, violating his constitutional rights. In making this argument, Lindsay asks this court to review this matter under both the state and federal constitutions. Lindsay concedes that he failed to present an independent state constitutional analysis to the district court regarding his motion to suppress. Nevertheless, Lindsay asks this court to provide a state constitutional ruling with respect to the suppression issues presented, in light of the district court's expressed wish for assistance in the area, and despite the state of the record.[6]

■ [¶ 16] Upon our careful review, we decline to rule on the state constitutional issues presented by Lindsay, for the first time, on appeal. We recently held in *State v. Williams,* 2004 WY 53, ¶ 16, 90 P.3d 85, ¶ 16 (Wyo.2004) (citing *Bailey,* 12 P.3d at 177–78; *Doles v. State,* 994 P.2d 315, 319–20 (Wyo. 1999); *Gronski v. State,* 910 P.2d 561, 565–66 (Wyo.1996); and *Wilson v. State,* 874 P.2d 215, 219 (Wyo.1994)) that when a defendant fails to assert a cogent independent state constitutional based argument before the district court, a defendant fails to preserve such issues for appellate review. See also, *Campbell,* ¶ 10 fn.2.

[¶ 17] In the same vein, upon addressing the fact that W.R.Cr.P. 11(a)(2) allows a defendant to plead guilty or nolo contendere while reserving the right to seek review on appeal of any specified pretrial motion, we set forth in *Morgan,* ¶ 24:

In *Bailey,* we ruled that a conditional plea of guilty does not provide carte blanche permission for the appellant to present any and all arguments on appeal. 12 P.3d at 177–78. Instead, the appellant may only raise those issues on appeal which were clearly called to the attention of the district court. *Id.;* see also, *Elder v. Jones,* 608 P.2d 654, 660 (Wyo.1980). In other words, "[w]e will not consider nonjurisdictional issues on appeal unless they have been raised before the lower court with at least a minimum effort to present a cogent legal argument." *Bailey,* 12 P.3d at 178.

### Federal Constitutional Issues.

[¶ 18] In *Campbell,* this court recently assessed an argument that a defendant's constitutional rights under the Fourth Amendment to the United States Constitution were violated through the illegal detention of the defendant in an alleged effort to conduct a canine sniff of his vehicle. Therein, this court, at ¶ 11, recognized:

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. A traffic stop amounts to a seizure under the Fourth Amendment. *Damato [v. State,* 2003 WY 13,] ¶ 9, [64 P.3d 700, ¶ 9 (Wyo.2003) ]; *Innis v. State,* 2003 WY 66, ¶ 14, 69 P.3d 413, ¶ 14 (Wyo. 2003). See also *United States v. Wood,* 106 F.3d 942, 945 (10th Cir.1997). Under the principles of *Terry v. Ohio,* 392 U.S. 1, 19–20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968), a court must determine whether the detention was reasonable by applying a two-part analysis. *Damato,* ¶ 9. First, this Court considers whether the initial stop

---

**6.** In its order denying Lindsay's motion to suppress, the district court included a footnote which it characterized as a dissent to its ruling. In that footnote, the district court requested *sua* *sponte* that this court address the issues posed by Lindsay under the Wyoming Constitution and gave its own observations and recommendations to this court.

was justified. *Id.* Secondly, we determine whether the officer's actions during the detention were "reasonably related in scope to the circumstances that justified the interference in the first instance." *Id.;* see also *Innis,* ¶ 14; *Wood,* 106 F.3d at 945.

[¶ 19] Here, just as in *Campbell,* Lindsay did not challenge the reasonableness of the initial stop while before the district court; therefore, we must turn directly to the second part of the analysis—the reasonableness of the detention.[7] In *Campbell,* ¶ 12, we noted:

... "An investigative detention must be temporary, lasting no longer than necessary to effectuate the purpose of the stop, and the scope of the detention must be carefully tailored to its underlying justification." *Wood,* 106 F.3d at 945 (citing *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 1325–26, 75 L.Ed.2d 229 (1983)). During a routine traffic stop, a law enforcement officer may request the driver's proof of insurance, operating license, and vehicle registration, run a computer check, and issue a citation or warning. *Damato,* ¶ 13; *Burgos–Seberos v. State,* 969 P.2d 1131, 1133 (Wyo.1998). See also *United States v. Elliott,* 107 F.3d 810, 813 (10th Cir.1997); *Wilson [v. State ],* 874 P.2d [215,] 224 [(Wyo.1982) ]. The officer may detain the driver and his vehicle only for the period of time reasonably necessary to complete these routine matters. *Damato,* ¶ 13; *Burgos–Seberos,* 969 P.2d at 1133; *Wood,* 106 F.3d at 945. Once the driver has produced a valid driver's license and proof that he is entitled to operate the vehicle, he must be allowed to proceed without further delay. *Damato,* ¶ 13; *Burgos–Seberos,* at 1133; *Wood,* at 945. . . .

It has also been recognized that the basis for and the circumstances surrounding the stop, rather than an arbitrary time limit, govern a stop's permissible length. Hence, a stop's duration and whether it was unreasonably extended is analyzed in terms of the length necessary for its legitimate purpose. *United States v. Guzman,* 864 F.2d 1512, 1519 fn. 8 (1988) (citing *United States v. Sharpe,* 470 U.S. 675, [685–87,] 105 S.Ct. 1568, [1574–76,] 84 L.Ed.2d 605, [614–16] (1985)). In assessing the scope of the intrusion, we must examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly and without undue delay in detaining a defendant. *Wilson v. State,* 874 P.2d 215, 223–224 (Wyo.1994) (quoting *United States v. Sharpe,* 470 U.S. 675, [685–87,] 105 S.Ct. 1568, [1574–76,] 84 L.Ed.2d 605, [614–16] (1985)).

[¶ 20] At the suppression hearing, the district court heard testimony from Trooper Mrnsy and was presented with both stipulated facts and other stipulated evidence. In doing so, the district court assessed the credibility of the witnesses, weighed the evidence, and found that Trooper Mrnsy had the right to detain Lindsay in order to issue the citations for driving while under suspension and following too closely, and to investigate whether the vehicle was stolen. The district court further ruled that although Lindsay's detention over the extended time period was somewhat suspect as 1) Lindsay's detention appeared to be motivated, in part, by Trooper Mrnsy's desire to hold Lindsay so that a drug dog could arrive at the scene, and 2) that there did not exist specific and articulable facts justifying Trooper Mrnsy's suspicion that illegal drugs might be in the vehicle driven by Lindsay, Trooper Mrnsy's investigation concerning whether the vehicle was stolen did not take an unreasonable length of time. Specifically, the district court indicated in its order when determining if the delay in arresting Lindsay was a pretext to permit an otherwise unauthorized search:

... It appears that [Trooper] Mrnsy did not want to investigate the possibility of an unauthorized use or stolen car and delayed doing so until it became apparent that

---

7. In his brief and for the first time on appeal, Lindsay summarily infers that he challenges the reasonableness of the initial stop. This newly asserted argument contradicts Lindsay's position before the district court that he did not contest the reasonableness of the initial stop. Again, pursuant to our well-established precedent, we refuse to address non-jurisdictional issues on appeal when they have not been raised before the lower court with at least a minimum effort to present a cogent legal argument. *Morgan,* ¶ 24 (quoting *Bailey,* 12 P.3d at 178).

there would be a long delay before the drug dog would arrive and [Lindsay] would not consent to a search of the car. The delay came about from [Trooper] Mrnsy's decision to not begin the investigation of the possible auto theft until after the citations were issued and the video shows that Trooper Mrnsy was very deliberate in issuing the citations. Trooper Mrnsy could have began the process of contacting [the rental car company] to find out if they wanted to press charges earlier in the stop. However, whether and (*sic*) officer should investigate potential crimes concurrently or in a sequential fashion is an area where deference should be given to an officer. It took only twenty-seven minutes after [Trooper] Mrnsy requested that [the rental car company] be contacted to see if they wanted to press criminal charges until he learned that a stolen car report would be filed and an arrest was made. This is not an unreasonable length of time.

Even if the charge of unauthorized use was a pretext to allow [Trooper] Mrnsy to gain entrance into the car, the rule under the Fourth Amendment is that "[S]ubjective intentions play no role in ordinary, probable cause analysis." *Damato v. State*, 64 P.3d at 705, quoting *Whren v. United States*, 517 U.S. 806, 813, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89[, 98] (1996)....

[¶ 21] Upon our review of the record, we hold the district court's decision is supported by the evidence received at hearing. As indicated previously, when reviewing a trial court's ruling on a motion to suppress, 1) we will not interfere with the trial court's findings of fact unless the findings are clearly erroneous, and 2) we must view the evidence in the light most favorable to the trial court's determination because the trial court has an opportunity at the evidentiary hearing to assess the credibility of the witnesses, weigh the evidence, and make the necessary inferences, deductions, and conclusions. *Guzman*, ¶ 11 (quoting *Hughes*, ¶ 10); *Campbell*, ¶ 9.

[¶ 22] Further, upon our independent review, we hold that Lindsay's constitutional rights under the Fourth Amendment to the United States Constitution were not violated under these circumstances, as a matter of law. In this instance, Trooper Mrnsy reasonably detained Lindsay and the vehicle he was driving only for a period of time sufficiently necessary to issue Lindsay the driving while under suspension citation, the following too closely warning, and to complete an investigation into Lindsay's ability to operate the rental car. With respect to the unauthorized use of vehicle investigation, we find convincing those statements made by Trooper Mrnsy at hearing. Trooper Mrnsy stated that he was compelled to complete his investigation in the area because the rental contract clearly indicated that the rental car was to be driven solely in California and only by Ms. Griego. Further, Trooper Mrnsy stated that his lack of investigation might risk the continued improper use of the rental vehicle by allowing Lindsay and his passenger to leave the traffic stop scene. Looking at the totality of the circumstances, we hold that Trooper Mrnsy had a reasonable articulable suspicion that Lindsay was not authorized by the rental car company to operate the rented automobile and necessarily detained Lindsay to complete such investigation. We likewise find Lindsay's argument that Trooper Mrnsy should have allowed Lindsay's passenger to drive the rental car vehicle away from the scene, once Lindsay's traffic violations were addressed, to be questionable because the vehicle was only to be operated by Ms. Griego under the terms of the rental agreement.

[¶ 23] We also note the male passenger of the vehicle advised Trooper Mrnsy that his driver's license had expired. Lindsay further personally presented Trooper Mrnsy with the limiting rental agreement language at issue and was found to have been driving while his driver's license was suspended. Therefore, Lindsay, himself, must be attributed with causing the investigation to take place that unarguably resulted in the delay. Moreover, Trooper Mrnsy was faced with the somewhat unique occurrence of whether the unauthorized use of a vehicle statute applied to an occasion where a rental car was being used beyond the specified contract terms. Finally, the record evidences that Trooper Mrnsy acted diligently under the circum-

stances and did not unnecessarily prolong Lindsay's detention beyond that required to issue the traffic citations and to investigate the rental car situation.

[¶ 24] Furthermore, we do not find Lindsay's implied argument compelling that under our holding in *Campbell* the entire traffic stop must be invalidated because Trooper Mrnsy questioned Lindsay about drugs outside the scope of detention. In *Campbell*, ¶ 12, citing *United States v. Jones*, 44 F.3d 860, 872 (10th Cir.1995), we did recognize that during a stop an officer generally may not ask a detained motorist questions unrelated to the purpose of the stop, including questions about controlled substances, unless the officer has reasonable suspicion of other illegal activity.[8] However, we find our holding in *Campbell* to be distinguishable.

[¶ 25] In the instant case, Trooper Mrnsy had a reasonably sufficient reason to continue to detain Lindsay after issuance of the traffic citations, i.e., to investigate the potential unauthorized use of the rental vehicle. In *Campbell* there existed no reasonable articulable suspicion to detain the defendant after the purpose of the traffic stop was completed upon issuance of the driver contact form. The discovery of illegal contraband in *Campbell* was ultimately made as a result of an unlawful detention followed by the defendant's "voluntary" consent to a search. In this case, Lindsay continuously rebuffed Trooper Mrnsy's requests to search the vehicle he was driving and the discovery of the methamphetamine on Lindsay's person was made only after Lindsay's lawful arrest. Moreover, we clearly set forth in *Damato*, ¶ 10 (citing *Whren v. United States*, 517 U.S.

806, 813, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89, 98 (1996), *Arkansas v. Sullivan*, 532 U.S. 769, 771–72, 121 S.Ct. 1876, 1878, 149 L.Ed.2d 994, 998 (2001) (per curiam), *Atwater v. Lago Vista*, 532 U.S. 318, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001), and *United States v. Robinson*, 414 U.S. 218, 221 n. 1, 94 S.Ct. 467, 470 n. 1, 38 L.Ed.2d 427, 432–433 n. 1 (1973)), that ulterior motives do not invalidate police conduct that is justifiable on the basis of probable cause to believe that a violation of law has occurred.

[¶ 26] Finally, Lindsay contends that he should have been given his *Miranda* rights by Trooper Mrnsy immediately after he was asked to accompany Trooper Mrnsy to the patrol vehicle, asserting that he was then taken into formal "custody."[9] The State citing *Morgan*, ¶¶ 22–25, as authority, argues that Lindsay failed to raise this issue to the attention of the district court and has, therefore, waived appellate review in this area. We agree. Our review of the record evidences that Lindsay did not address this issue with sufficient particularity at the district court level.

## CONCLUSION

[¶ 27] As indicated above, we find no error in the proceedings. We, therefore, affirm the judgment and sentence of the district court.

---

8. As an aside, we find that Trooper Mrnsy's questions regarding whether Lindsay possessed any weapons on his person to be acceptable. As set forth in *Campbell*, at ¶ 12 fn. 3, citing *United States v. Holt*, 264 F.3d 1215 (10th Cir.2001), on rehearing *en banc*, an exception to the general rule exists when questions are asked of a motor-

ist about the presence of weapons in order to reasonably assure officer safety.

9. See, *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and its progeny.